RANDI F., a Minor, *et al.*, Plaintiffs-Appellants, v. HIGH RIDGE YMCA *et al.*, Defendants-Appellees.

First District (5th Division)   No. 87—2314

Opinion filed May 13, 1988.

Peter F. Zullo and David A. Novoselsky & Associates, both of Chicago (David A. Novoselsky and Kathleen M. Krist, of counsel), for appellants.

James L. Pittman & Associates, Ltd., of Chicago (James L. Pittman, of counsel), for appellees.

JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal from an order dismissing with prejudice three counts of an amended complaint for failure to state a cause of action. We affirm.

Plaintiffs, Ila F. and Burton F., individually and as parents and next friends of Randi F., a minor, filed a five-count amended complaint against defendants, Mary Jo Burnquist and her employer, the Young Men's Christian Association of Metropolitan Chicago (YMCA). Counts I and II were directed at Burnquist, who was employed as a teacher's aide at a day-care center operated by the YMCA, and alleged that she had beaten and sexually assaulted Randi F., a three-year-old girl. Specifically, the counts made the following allegations:

"On September 19, 1985, BURNQUIST intentionally assaulted RANDI by striking RANDI with a stick and inserting the stick into RANDI'S anal area.

On numerous occasions between August 1985 and September 20, 1985, Defendant BURNQUIST intentionally assaulted RANDI while she was attending the YMCA as a pupil by committing one or more of the following harmful and offensive contacts:

A. Touched her vagina and private parts;

B. Hit her with a stick on her chest and stomach;

C. Inserted a stick in her rectal area;

D. Inserted a stick in her vaginal area;

E. Pulled her pants down and shirt up while RANDI protested."

Counts III (intentional assault), IV (intentional infliction of emotional distress) and V (loss of society and companionship) were directed at the YMCA, based on the doctrine of *respondeat superior*, and alleged that the foregoing acts were committed "during the course of" Burnquist's employment at the YMCA day-care center, which employment included "the care, custody, control, supervision and discipline" of Randi and other children. Plaintiffs further alleged

that as a direct and proximate result of these acts, Randi "suffered pain and physical injury" and "severe emotional distress" which required both medical and psychiatric care.

Defendant YMCA moved to dismiss counts III, IV and V of plaintiffs' amended complaint for failure to state a cause of action. The YMCA argued that it could not be held liable under the doctrine of *respondeat superior* for the acts of Burnquist because those acts were not done within the scope of her employment. The circuit court agreed and dismissed counts III, IV and V with prejudice. This appeal followed.

■ A motion to dismiss admits as true for the purpose of the motion, all facts well pleaded together with all reasonable inferences which could be drawn therefrom (*Hubbard v. Aetna Insurance Co.* (1976), 37 Ill. App. 3d 666, 669, 347 N.E.2d 396), but no conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest (*Cain v. American National Bank & Trust Co.* (1975), 26 Ill. App. 3d 574, 578, 325 N.E.2d 799). Although pleadings are to be liberally construed (Ill. Rev. Stat. 1985, ch. 110, par. 2—603(c); *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 420-21, 430 N.E.2d 976), a complaint nevertheless must be dismissed if it fails to "set forth a legally recognized claim as its avenue of recovery" or "plead facts which bring the claim within the legally recognized cause of action alleged" (*People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308, 430 N.E.2d 1005).

Plaintiffs contend that the allegations in counts III, IV and V of the amended complaint are sufficient to state a cause of action against the YMCA on the theory of *respondeat superior*. It is the YMCA's position, however, that counts III, IV and V are both legally and factually insufficient and that dismissal was, therefore, proper.

■ Under the doctrine of *respondeat superior,* an employer may be liable for the negligent, wilful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer; however, the employer is not liable to an injured third party where the acts complained of thereby were committed solely for the benefit of the employee. See *Webb v. Jewel Cos.* (1985), 137 Ill. App. 3d 1004, 1006, 485 N.E.2d 409 (and the cases cited therein).

■ ■ Plaintiffs assert that the trial court erred in ruling, as a matter of law, that Burnquist was not acting within the scope of her employment, but rather acted solely for her own benefit in assaulting and sexually molesting their daughter. We disagree. Although the issue of whether an employee has departed from the scope of employ-

ment by acting purely for her own interest, rather than at least in part for the employer, is normally a question for the jury (*Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 493, 422 N.E.2d 925), in our judgment, counts III, IV and V of the amended complaint were both factually and legally insufficient and were properly dismissed on the YMCA's motion.

Initially, we observe that the complaint failed to allege that the acts occurred *in* the course of Burnquist's employment with the YMCA, or any facts from which that conclusion reasonably could be inferred. The complaint alleged only that Burnquist was "a teacher's aide," and that the acts occurred "during the course" of her employment at the day-care center, which employment included "the care, custody, control, supervision and discipline" of Randi and other children.

Plaintiffs, however, argue that it is reasonable to infer that "a person in charge of [a] day care program" with responsibilities for "the care, custody, control, supervision and discipline" of small children "would be required to help these toddlers with their bathroom details." "Such details," plaintiffs continue, "would certainly include the helping of a child with [her] clothing to complete [her] bathroom duties and would also encompass the touching of private parts if necessary to help in maintaining the child's hygiene." Plaintiffs argue further that it is reasonable to infer that "as a day care instructor," Burnquist would be expected to exercise "some degree of discipline" over the children "in their bathroom duties."

There are several difficulties with this argument. First, nowhere in the amended complaint is Burnquist described as "a person in charge of [a] day care program," or "a day care instructor," as plaintiffs refer to her in their briefs. The complaint identifies her only as "a teacher's aide." Second, plaintiffs ask us to assume that Burnquist's responsibilities included taking children to the bathroom and to infer from that assumption that her duties would include helping the children with their clothing, touching their private parts and disciplining them if they misbehaved. Based on the facts set forth in the complaint, we do not believe that either the assumption or the inference is reasonable. Third, and perhaps most significantly, plaintiffs' entire argument on appeal proceeds on the unstated assumption that the acts described in the amended complaint took place in a bathroom at the day-care center when, in fact, no such allegation was made in the amended complaint. Plaintiffs virtually conceded at oral argument that if those acts did not take place in the bathroom, there would be no basis for asserting that Burnquist was acting within the scope of

her employment when she assaulted and sexually molested their daughter.

■ Regardless of these factual deficiencies, we agree with the trial court's ruling that as a matter of law, Burnquist was not acting within the scope of her employment but solely for her own benefit when she assaulted and sexually molested plaintiffs' daughter. We find plaintiffs' reliance on *Wilson v. Clark Oil & Refining Corp.* (1985), 134 Ill. App. 3d 1084, 481 N.E.2d 840, *McDonnell v. City of Chicago* (1981), 102 Ill. App. 3d 578, 430 N.E.2d 169, and *Sunseri v. Puccia* (1981), 97 Ill. App. 3d 488, 422 N.E.2d 925, to be misplaced.

In *Wilson,* the owner of a service station was held liable under the doctrine of *respondeat superior* for the action of a station employee in accidentally shooting the plaintiff on the station premises where the employee was on duty at the time of the accident, the shot occurred when the employee was hurriedly passing the gun back to a friend so as not to be seen with the gun while waiting on a customer, the plaintiff had come to the station to make a purchase, and the station owner's policies against guns on the premises and customers in the station office had been repeatedly violated in the past.

In rejecting defendant's assertion that the employee's actions involving the gun were not of the kind commonly done by its employees and were for his personal benefit rather than that of the station owner, the court emphasized that "the shooting occurred during and resulted from his attempt to wait on a customer." (*Wilson,* 134 Ill. App. 3d at 1091.) The key factor in *Wilson* was that the employee was acting in his employer's interest in trying to conceal the gun from the view of a customer when it accidentally discharged. 134 Ill. App. 3d at 1090.

In *McDonnell,* the court held that where a security guard's duties included quelling disturbances on the employer's premises, the employer knew that the guard carried a revolver while on duty, and acts during an altercation resulting in injury to plaintiff were similar to those authorized by the employer and were not unexpectable in view of his responsibilities, the decision of whether the security guard was acting within the scope of his employment was for the jury to decide, and the trial court properly denied the employer's motion for judgment notwithstanding the verdict. *McDonnell,* 102 Ill. App. 3d at 584-85.

Finally, in *Sunseri,* an action brought against the owner of a tavern and his bartender for injuries sustained by the plaintiff during a fight with the bartender, the court held that directed verdicts for the defendants were improper. (*Sunseri,* 97 Ill. App. 3d at 491-94.) Not-

ing that verdicts should be directed only where the evidence, viewed most favorably to the respondent, so overwhelmingly favors the movant that no contrary verdict could ever stand, the court held that the jury should have been allowed to resolve conflicts in testimony as to who initiated the fight and to determine whether, in forcibly ejecting and fighting with the plaintiff, the bartender was acting within the scope of his employment, and whether the tavern owner, who was present at the time of the incident, was negligent in failing to take some action to terminate the fight by either so directing the bartender or by personal intervention. 97 Ill. App. 3d at 492-94.

The court stated that in determining whether an employee's act was committed within the scope of his employment, the focus is generally upon the issues of whether the act was conducted substantially within the constraints of authorized time and location of the employment, and whether the conduct was actuated at least in part by a purpose to further the employer's business. (97 Ill. App. 3d at 493.) Thus, if an employee commits an intentional tort with the dual purpose of furthering the employer's interest and venting personal anger, *respondeat superior* may lie; however, if the employee acts purely in his own interest, liability under *respondeat superior* is inappropriate. (97 Ill. App. 3d at 493.) The court held that an employer is liable for intentional torts of an employee that are not unexpectable in view of the latter's duties. 97 Ill. App. 3d at 493.

While we have no dispute with the application of the foregoing principles to the circumstances present in the cases cited by plaintiffs, we believe that the facts in those cases are clearly distinguishable from those present here. Unlike *Wilson,* the conduct in the case at bar was intentional, not accidental, and plaintiffs have not explained how, in assaulting and sexually molesting their daughter, Burnquist was acting in the YMCA's interest. And unlike *McDonnell* and *Sunseri,* which involved assaults by a security guard and a bartender, it cannot reasonably be said that assaults by a teacher's aide at a daycare center were encompassed in her duties or were similar to those duties or could have been anticipated by her employer.

In our judgment, the facts before us are more similar to those in *Webb v. Jewel Cos.* (1985), 137 Ill. App. 3d 1004, 485 N.E.2d 409. In *Webb,* a security guard for a Jewel grocery store stopped plaintiff, a young girl, after she had made a purchase and led her to an enclosed office for the purpose of searching her. In the course of that search, the guard sexually molested her.

On appeal, we affirmed the dismissal of a count brought against Jewel under the theory of *respondeat superior,* stating that "regard-

less of the degree of deviation from the scope of employment, the fact remains that the sexual molestation of a young girl by a security guard is \*\*\* a deviation [from the scope of employment] having no relation to the business of Jewel or the furtherance thereof." (137 Ill. App. 3d at 1008.) In reaching that conclusion, we relied on the decisions in *Hoover v. University of Chicago Hospitals* (1977), 51 Ill. App. 3d 263, 366 N.E.2d 925, and *Padilla v. d'Avis* (N.D. Ill. 1984), 580 F. Supp. 403, each of which was an action against an employer-hospital and an employee-doctor for damages resulting from sexual assaults upon the plaintiffs during the course of physical examinations.

In affirming the trial court's order dismissing, for failure to state a cause of action, that count of plaintiff's complaint against the hospital on the theory of *respondeat superior,* the *Hoover* court set forth the general rule regarding an employer's liability for the acts of its employees and then stated:

> "In the instant case the intentional sexual assault alleged \*\*\* cannot be interpreted as an act in furtherance of the hospital's business. This alleged intentional act of the doctor was committed solely for the benefit of the doctor and the trial court correctly ordered [the count] dismissed." 51 Ill. App. 3d at 267.

In *Padilla,* an action by two plaintiffs against the City of Chicago and a doctor employed at a health facility thereof, the court cited the general rule, but held that the opinion in *Hoover* was controlling and stated:

> "Even with all factual inferences in plaintiffs' favor, neither Complaint contains any allegations that could show [that] the sexual assault was 'actuated at least in part by a purpose to further the employer's business.' *Sunseri v. Puccia,* 97 Ill. App. 3d 488, 493 \*\*\*. That incurable disease is fatal to both plaintiffs' state law claims against [the] City." *Padilla,* 580 F. Supp. at 409-10.

We agree with the analysis of the foregoing decisions and hold that under the facts presented in plaintiffs' amended complaint, the assault and sexual molestation of a three-year-old child by a teacher's aide at a day-care center is a deviation from the scope of the employment having no relation to the business of the day-care center or the furtherance thereof. (See *Rubin v. Yellow Cab Co.* (1987), 154 Ill. App. 3d 336, 507 N.E.2d 114 (complaint alleging that upon colliding with plaintiff's automobile, cab driver exited cab, walked to plaintiff's automobile and struck the latter on the head with a metal pipe, failed to state a cause of action for battery against the driver's employer under the *respondeat superior* doctrine, absent some connection between

the driver's act and occupation or any interest in protecting or furthering employer's business).) Accordingly, there is no basis to hold the YMCA liable under a theory of *respondeat superior* and the trial court properly dismissed with prejudice counts III, IV and V of the amended complaint.

Order affirmed.

PINCHAM and MURRAY, JJ., concur.