**EMPLOYERS INSURANCE OF WAUSAU A MUTUAL COMPANY, a mutual insurance corporation, Plaintiff,**

**v.**

**George BUSH, in his official capacity as President of the United States; William K. Reilly, individually and as Administrator of the United States Environmental Protection Agency; Valdas V. Adamkus, individually and as Regional Administrator of Region V of the United States Environmental Protection Agency; Basil G. Constantelos, individually and as Director of the Waste Management Division of the United States Environmental Protection Agency for Region V; Certain Unknown Employees of the United States Environmental Protection Agency; the United States Environmental Protection Agency; and the United States of America, Defendants.**

**No. 91 C 4254.**

United States District Court,
N.D. Illinois, E.D.

April 16, 1992.

Daniel Charles Murray, Daniel A. Dupre, Joseph Gerard Lyons, Frederick S. Mueller, Johnson & Bell, Ltd., Chicago, Ill., Linda Anne Stark, Robert M. Wattson, Rolf E. Gilbertson, Zelle & Larson, Minneapolis, Minn., for plaintiff.

Jonathan C. Haile, James Michael Kuhn, Asst. U.S. Attys., Chicago, Ill., Alan D. Greenberg, U.S. Dept. of Justice, ENR Div., Elizabeth A. Strange, U.S. Dept. of Justice, Nancy Gaines, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Employers Insurance of Wausau A Mutual Company ("Wausau") brings this multi-count action against the United States of America, the United States Environmental Protection Agency ("EPA"), George Bush, in his official capacity as President of the United States, William K. Reilly, individually and as Administrator of the EPA, Valdas V. Adamkus, individually and as Regional Administrator of Region V of the EPA, Basil G. Constantelos, individually and as Director of the Waste Management Division of the EPA for Region V and certain unknown employees of the EPA. Presently pending before the court are (1) the federal defendants' motion to dismiss Wausau's second-amended complaint for lack of subject matter jurisdiction, and (2) the individual defendants' motion to dismiss for failure to state a claim and for lack of personal jurisdiction.[1] For the rea-

---

1. For the sake of convenience, the United States of America, the EPA and all defendants sued in their official capacities are collectively referred to as the "federal defendants." The term "indi-

sons stated below, the federal defendants' motion is granted in part and denied in part. The individual defendants' motion is granted.

## I. FACTUAL BACKGROUND [2]

Effective August 3, 1987, Wausau issued an insurance policy to Group Eight Technology, Inc. ("Group Eight"), covering certain losses to property located at 2246 Third Street in Wyandotte, Michigan (the "Wyandotte Property"). Under this policy, Wausau agreed to reimburse Group Eight for specific losses or perils, including fire, and the expense of debris removal resulting from such losses or perils. On August 24, 1987, fire struck a building occupied by Group Eight at the Wyandotte Property, prompting Group Eight to submit a claim to Wausau under the policy.

Without waiving its right to contest coverage, Wausau initiated discussions with Group Eight regarding the removal of debris, including certain electrical transformers located on the Wyandotte Property. Samples of the fluids contained in three of the six operational electrical transformers were taken by Marine Pollution Control, Inc. ("MPC") to test for the presence of polychlorinated biphenyls ("PCBs"). On September 9, 1987, MPC reported that the highest concentration level of PCBs in any of the transformers was 2.7 parts per million, well below that considered unacceptable by the EPA.

Without the participation of Wausau, in November of 1987, Group Eight selected Sclafani Trucking, Inc. ("Sclafani") to perform demolition and removal work at the Wyandotte Property. Upon inspection of the premises, Sclafani discovered a seventh transformer which, unlike the other six, had not been in service at the time of the fire. By letter dated December 1, 1987, Group Eight informed Sclafani that no PCBs were present in the transformers, and that Sclafani could make arrangements to dispose of them.

In January 1988, Wausau and Group Eight reached a settlement respecting fire loss coverage at the Wyandotte Property in the amount of $1,250,000. Additionally, Wausau agreed to pay for the cost of demolition and removal of the transformer fluids and certain other hazardous wastes at the Wyandotte Property once Group Eight's contractor completed the job. To effectuate demolition and removal, Group Eight and Sclafani recruited K & D Industries Services, Inc. ("K & D") to assist in transporting the fluids from the Wyandotte Property. Wausau first learned of K & D's involvement on February 7, 1989, at which time Sclafani called a meeting and invited K & D and Howard Aidenbaum of Wausau. At this meeting, K & D informed Aidenbaum that K & D was being considered by Sclafani and Group Eight to facilitate the removal, transport and disposal or treatment of the transformer fluids. Aidenbaum requested from K & D a cost estimate of the work to be performed. Additionally, Sclafani provided K & D with the laboratory reports for the six transformers tested by MPC.

On February 21, 1989, K & D submitted a proposal to Group Eight and Sclafani regarding the draining, removal, transport and disposal or treatment of the transformer fluids at the Wyandotte Property. As stated in the proposal, K & D had arranged to take the fluids to a CIW Company ("CIW") facility in Romulus, Michigan. Prior to transportation, Group Eight learned from the EPA that the seventh transformer was a PCB transformer and the six others were mineral transformers, several of which were leaking and considered by the EPA to be PCB-contaminated. The EPA advised Group Eight that the storage, marking, recordkeeping and disposal of PCB's is federally regulated,

vidual defendants" includes all defendants sued in their individual capacities.

**2.** Of course, as with all motions to dismiss, we take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.,* 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986)).

and requested that Group Eight keep the EPA informed of all actions taken involving the transformers. In preparation for transportation to the CIW facility, on April 1, 1989, Group Eight applied for an EPA identification number for the Wyandotte Property. Four days later, Aidenbaum agreed to pay the cost of removal, transport, disposal or treatment of the fluids of the six mineral transformers, as estimated in the February 21, 1989 K & D proposal.

Despite the EPA warnings, and despite the fact that only four of the seven transformers had been tested for PCBs, on April 15, 1989, Group Eight and Sclafani allowed K & D to drain, mix and remove 700 gallons of fluids from all seven transformers. The fluid was transported to the CIW site, where CIW received and placed the transformer fluids in its process tanks for recycling. K & D prepared the Michigan Department of Natural Resources' ("MDNR") hazardous waste manifest for the transport of the transformer fluids, using Group Eight's EPA identification number and identifying Group Eight as the generator and K & D as the transporter. Al Sclafani of Sclafani Trucking, Inc. signed this document. After confirmation that the work had been performed, Wausau reimbursed Group Eight in accordance with the insurance policy.

On May 17, 1989, CIW learned through a customer that oil originating from its Romulus, Michigan facility contained PCB contamination. CIW immediately engaged DiHydro Analytical Services to test its tanks, and learned on May 24, 1989, that PCB contamination existed in several of the process tanks. On September 7, 1989, CIW informed the EPA and the MDNR of its intention to abandon the site. Shortly thereafter, CIW abandoned the Romulus facility.

By letter dated September 11, 1989, the EPA designated Wausau as a "Potentially Responsible Party" ("PRP") under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. § 9601 et seq.,

with regard to the CIW site, and demanded Wausau's participation in the cleanup. That letter required Wausau to notify the EPA within twenty-four hours of its decision to participate in the cleanup. Wausau did not respond, prompting the EPA (1) to begin the cleanup at the CIW site, and (2) to initiate an investigation to determine responsibility for the contamination. As part of its investigation, the EPA sought information from Group Eight, K & D, Sclafani and CIW in an effort to develop an administrative record.

On November 28, 1989, Wausau—along with CIW, K & D and Group Eight—was named as a respondent in an unilateral administrative order, issued by the EPA pursuant to § 9606 of CERCLA, directing Wausau to take emergency cleanup measures at the CIW site. Under the terms of the order, Wausau was required to take definitive action within five calendar days, facing substantial penalties under CERCLA for non-compliance. The § 9606 order, as amended, enumerated thirty-three findings of fact respecting the contamination of the CIW site. Wausau claims that these findings "seriously mischaracterized Wausau as having played a key role in the waste disposal decision leading to the contamination of the CIW site." Based on these "materially incorrect" findings, the § 9606 order made the "erroneous, arbitrary and wrongful" determination that Wausau, among others, had "arranged for the disposal or transport for the disposal" of hazardous substances from the Wyandotte Property to the CIW site and, as such, was liable as a "person" under § 9607(a)(3) of CERCLA. Further, given the containment of the contamination to the process tanks, the order wrongfully stated that "an imminent and substantial threat to the environment" existed at the abandoned CIW site, thereby undermining the EPA's conclusion regarding the necessity of emergency removal.

At a meeting with the EPA on December 21, 1989, Wausau attempted to establish that it had been improperly named in the order and requested a hearing to that effect. EPA officials, however, informed Wausau that the meeting was limited in

scope to the mechanics of implementing the § 9606 order, and implementation was discussed thereafter to the exclusion of the propriety of naming Wausau a PRP or respondent to the order. On January 2, 1990, Wausau submitted to the EPA written comments contesting the § 9606 order, and again requested a hearing. The EPA failed to respond to Wausau's written comments. Rather, the EPA filed an administrative action against Wausau under the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.*, alleging that Wausau failed to properly dispose of transformer fluids contaminated with PCBs and demanding that Wausau pay a penalty of $25,000. Consequently, without any admission of responsibility, Wausau opted to comply with the § 9606 order, submitting to the EPA an Emergency Response Action Plan ("ERAP"). By letter dated February 26, 1990, the EPA approved Wausau's plan.

On January 24, 1991, Wausau completed the on-site actions required by the § 9606 order, as amended, and the ERAP. As such, Wausau submitted to the EPA a Response Action Report, dated February 20, 1991, thereby completing its obligations. In its effort to comply with the § 9606 order and the ERAP, Wausau incurred over $2,000,000 in costs. Accordingly, on March 22, 1991, Wausau filed a petition for reimbursement of reasonable response costs pursuant to § 9606(b)(2) of CERCLA. The EPA responded to Wausau's request by letter dated June 10, 1991, refusing to grant relief on the grounds that Wausau had not fully complied with the requirements of the § 9606 order and the ERAP. Specifically, the EPA claimed that Wausau did not comply with paragraphs 4(e), (f), (h) and (i) of the order, and section 3.3.2 of the ERAP. Wausau disputes the EPA's assessment of the work performed, claiming that the cleanup measures listed by the EPA were either complied with or not required by the order or the ERAP. To support its position, Wausau inspected the CIW site on June 24, 1991, and submitted "Post Response Action Compliance Comments" to the EPA on July 9, 1991. Nonetheless, the EPA hired an additional contractor to conduct further cleanup mea-

sures at the CIW site. The contractor completed the actions required by the administrative order on October 25, 1991.

Wausau brought the instant action on July 9, 1991. The second-amended complaint, filed on December 16, 1991, details numerous purported violations of federal and state law. Wausau's first three claims allege that the EPA's actions, taken pursuant to CERCLA, in ordering Wausau to undertake the cleanup at the CIW site violated Wausau's rights to procedural due process (Count I), substantive due process (Count II) and equal protection under the law (Count III), as guaranteed by the Fifth Amendment of the United States Constitution and the Constitution of either Michigan or Illinois. Counts IV and V, under the authority of § 2680(h) of the Federal Tort Claims Act, 28 U.S.C. § 2680(h), plead causes of action against the United States for malicious prosecution and abuse of process respectively. In Counts VI and VII, Wausau sues the EPA officials in both their official and individual capacities for malicious prosecution and abuse of process in violation of state tort law. Count VIII pleads a cause of action against all defendants for common-law negligence. In Count IX, Wausau asserts that defendants' actions violated § 706 of the Administrative Procedure Act, 5 U.S.C. § 706. Finally, in Count X of its second-amended complaint, Wausau claims entitlement to reimbursement under § 9606(b)(2) of CERCLA.

## II. STATUTORY BACKGROUND

Enacted in 1980, "CERCLA was designed 'to bring order to the array of partly redundant, partly inadequate federal hazardous substances clean up and compensation laws.'" *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1386 (5th Cir.1989) (quoting *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1040 (2d Cir. 1985)). The primary purpose of CERCLA is "the prompt cleanup of hazardous waste sites." *J.V. Peters & Co. v. Administrator, Environmental Protection Agency*, 767 F.2d 263, 264 (6th Cir.1985). To this end, upon a determination that there is an actual or threatened release of a hazardous

substance, CERCLA gives the EPA the authority (1) to take direct response action to clean up a site and later seek reimbursement from responsible parties, 42 U.S.C. § 9604(a) (1988), or (2) to require those responsible parties to conduct the cleanup themselves.[3] *Id.* § 9606(a); *see also Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1324 (7th Cir.1990). In order to "encourage potentially responsible parties to conduct a cleanup expeditiously and postpone litigation about responsibility to a late time," *Bethlehem Steel*, 918 F.2d at 1324, Congress amended CERCLA to give those parties that "receive and comply" with a cleanup order the right to petition the EPA for reimbursement. 42 U.S.C. § 9606(b)(2)(A) (Supp.1991). To obtain reimbursement, a petitioner must establish (1) "by a preponderance of the evidence that it is not liable for response costs under section 9607(a) of [CERCLA] and that the costs for which it seeks reimbursement are reasonable in light of the action required by the relevant order," *id.* § 9606(b)(2)(C), or (2) "on the administrative record, that the [EPA's] decision in selecting the response action ordered was arbitrary and capricious or was otherwise not in accordance with law." *Id.* § 9606(b)(2)(D). If the EPA refuses to grant all or part of a § 9606(b)(2) petition for reimbursement, "the petitioner may within 30 days of receipt of such refusal file an action ... in the appropriate United States district court seeking reimbursement." *Id.* § 9606(b)(2)(B).

### III. FEDERAL DEFENDANTS' MOTION TO DISMISS

The gravamen of the federal defendants' motion to dismiss is twofold: (1) Wausau's claim for reimbursement under § 9606(b)(2) (Count X) is premature; and (2) this court lacks subject matter jurisdiction over the remaining claims (Counts I–IX) pursuant to § 9613(h) of CERCLA. We begin our analysis with the second component of defendants' argument—whether § 9613(h) deprives this court of subject matter jurisdiction over Counts I–IX of Wausau's second-amended complaint.

### A. Judicial Review Under § 9613(h)

■ CERCLA vests the United States district courts with "exclusive original jurisdiction over all controversies arising under [the statute] without regard to the citizenship of the parties or the amount in controversy." 42 U.S.C. § 9613(b) (Supp. 1991). Entitled "Timing of review," § 9613(h) explicitly limits this general grant of jurisdiction:

No federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except the following:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under this section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

---

**3.** We note that most of the authority granted under CERCLA is explicitly imparted to the President. However, the President has delegated the administration of CERCLA to the Administrator of the EPA. *See* Exec. Order No. 12,580, 50 Fed.Reg. 2923 (1987), *reprinted in* 42 U.S.C. § 9615 note (Supp.1991).

42 U.S.C. § 9613(h) (Supp.1991). While conceding that Wausau's reimbursement claim (Count X) falls within one of the five exceptions to the jurisdictional bar, *i.e.,* § 9613(h)(3), defendants argue that this provision deprives this court of subject matter jurisdiction over the remaining claims (Counts I–IX). Defendants' contention, however, fails to account for the current posture of this case; the cleanup measures mandated under the § 9606(a) order were completed on October 25, 1991 and, as such, § 9613(h) is simply inapplicable to the present action.

The legislative history of § 9613(h) clearly reveals that it was enacted to "preclude piecemeal review and excessive delay of cleanup." 132 Cong.Rec. S14928 (daily ed. Oct. 3, 1986) (statement of Sen. Thurmond); *see Reardon v. United States,* 947 F.2d 1509, 1513–14 (1st Cir.1991); *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1390 (5th Cir.1989); *Chemical Waste Management, Inc. v. United States Environmental Protection Agency,* 673 F.Supp. 1043, 1055 (D.Kan.1987). Given these purposes, many courts have concluded that § 9613(h) "bars the federal courts from hearing *pre-enforcement* challenges to the merits of [removal or remedial actions]." *Reardon,* 947 F.2d at 1512 (emphasis added); *see also Boarhead Corp. v. Erickson,* 923 F.2d 1011, 1013–14 (3d Cir. 1991); *Schalk v. Reilly,* 900 F.2d 1091, 1095–96 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 509, 112 L.Ed.2d 521 (1990); *Voluntary Purchasing Groups,* 889 F.2d at 1388; *North Shore Gas Co. v. United States Environmental Protection Agency,* 753 F.Supp. 1413, 1416–17 (N.D.Ill.1990), *aff'd,* 930 F.2d 1239 (7th Cir.1991). Drawing from this principle, and concluding that opposite circumstances justify an opposite result, we hold that § 9613(h) does not prohibit *post-enforcement* challenges to remedial or removal actions. *See Werlein v.*

*United States,* 746 F.Supp. 887, 894–95 (D.Minn.1990) ("[T]he Court has jurisdiction to hear challenges to a completed, separate phase of the ... cleanup.").

■ Defendants argue, however, that even if § 9613(h) is inapplicable to post-enforcement challenges to remedial or removal action, Wausau filed its suit prior to the completion of the cleanup measures and, therefore, its claims fall within the ambit of the jurisdictional bar. While this argument is not meritless, it is overly formalistic. As noted by defendants, § 9613(h) was enacted to affect the "timing" of review. That a potentially responsible party's suit, filed pre-enforcement, was dismissed under § 9613(h) does not preclude that party from refiling post-enforcement. *See Wagner Seed Co. v. Bush,* 946 F.2d 918, 919 (D.C.Cir.1991) (After plaintiff's attempt to enjoin enforcement of EPA's § 9606(a) order was dismissed, *Wagner Seed Co. v. Daggett,* No. 86–0097 (E.D.N.Y. Jan. 27, 1986), *aff'd,* 800 F.2d 310 (1986), the court considered a reimbursement claim because the company later complied with the cleanup order.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992). As such, were this court to dismiss Wausau's claims because they were filed prematurely, Wausau would undoubtedly refile immediately. Requiring such a hollow procedural exercise would neglect the ends of justice.

In sum, § 9613(h) does not limit this court's jurisdiction to review completed remedial or removal action.[4] Accordingly, assuming proper jurisdiction under each of the relevant statutes or constitutional provisions, Wausau's claims are entitled to judicial review. We now turn to consider whether this court possesses jurisdiction over Wausau's claim for reimbursement under the specific dictates of CERCLA.[5]

---

4. In light of our conclusion that § 9613(h) is inapplicable to the present case, we need not decide whether that provision bars Wausau's constitutional claims, facial or as applied.

5. Apart from the contention that they are barred under § 9613(h), defendants also argue that this court lacks subject matter jurisdiction over Counts IV, V and VIII, brought against the Unit-

ed States under the Federal Torts Claims Act. The crux of defendants' assertion is that Wausau did not comply with the jurisdiction requirements of 28 U.S.C. § 2675(a) (Supp.1991), which provides in relevant part:

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal

### B. Wausau's Claim for Reimbursement (Count X)

Defendants contend that because the EPA has not issued a final decision on Wausau's petition for reimbursement, the instant claim is barred under the explicit dictates of § 9606(b)(2) and the related doctrine of exhaustion of administrative remedies.

■ When exhaustion is statutorily mandated, the exhaustion requirement is a jurisdictional prerequisite to judicial review. *Weinberger v. Salfi,* 422 U.S. 749, 764, 95 S.Ct. 2457, 2466, 45 L.Ed.2d 522 (1975); *Boarhead Corp.,* 923 F.2d at 1023 n. 18; *Saulsbury Orchards & Almond Processing, Inc. v. Yeutter,* 917 F.2d 1190, 1194 (9th Cir.1990). "Although judicially developed exhaustion requirements might be waived for discretionary reasons by courts, statutorily created exhaustion requirements bind the parties and the courts." *Saulsbury Orchards,* 917 F.2d at 1194. Section 9606(b)(2) specifies the following prerequisites to judicial review of reimbursement petitions: First, within 60 days after the completion of the requirements of a § 9606(a) order, the party seeking reimbursement must petition the EPA for the reasonable costs of such action, plus interest. 42 U.S.C. § 9606(b)(2)(A) (Supp.1991). Second, the EPA must "refuse[ ] to grant all or part of [the § 9606] petition." *Id.* § 9606(b)(2)(B). Finally, the petitioner must file the action within 30 days of the EPA's refusal in the appropriate United States district court. *Id.* We construe the first and second requirements, collectively, to impose an exhaustion requirement central to this court's subject matter jurisdiction.

■ On March 22, 1991, Wausau initiated the administrative review process by submitting a petition for reimbursement to the EPA's Office of Waste Programs Enforcement ("OWPE"). That petition invoked two responses: (1) a letter dated June 10, 1991, from David A. Ullrich, Director of the Waste Management Division of Region V of the EPA (the "Region's letter"), and (2) a letter dated June 26, 1991, from Bruce M. Diamond, Director of OWPE (the "OWPE letter"). The Region's letter stated that Wausau had not yet complied with the § 9606(a) order, detailing the perceived inadequacies. Wausau argues that this letter constitutes a "refusal to grant" its petition, and its claim is properly before the court. We disagree. Indeed, in its response to Wausau's petition, the OWPE explicitly stated: "Based on the statute [*i.e.,* CERCLA], and the Region's letter, OWPE considers the petition prematurely submitted and will not evaluate the petition until the required action is completed." Rather than deny the petition, in whole or in part, the OWPE gave Wausau two courses of action, either of which would result in the review of its petition: "If you have any basis to demonstrate that you have completed the action, please let us know right away. Otherwise, the Petitioner may, within 60 days after completing the required action, file a new petition with OWPE." The plain language of this letter clearly indicates that Wausau's petition for reimbursement was not being "refused," in whole or part, but rather that further action on the part of Wausau was necessary for the EPA to evaluate the petition.

■ More significantly, Wausau's actions following receipt of the OWPE letter provide unequivocal confirmation that not only was the EPA's action preliminary, but Wausau understood that fact. On July 9,

---

injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

This argument, however, is now moot. Wausau presented its FTCA administrative claims to the EPA on September 10, 1991. In late February or early March of 1992, the EPA issued a letter to Wausau denying the administrative claims. Taking no chances that these claims were now exhausted, Wausau re-pleaded the claims in a new action, *Employers Insurance of Wausau v. United States,* No. 92–2396 (N.D.Ill.). Finding the claims in the new action virtually identical to Counts IV, V and VIII in the present suit, we granted Wausau's motion to reassign the new case to this court.

1991, Wausau submitted "Post Response Action Compliance Comments" to the EPA in an effort to demonstrate that it had completed the required cleanup measures. This submission should have placed the EPA in a position to rule on Wausau's petition. However, that opportunity was nullified by this action, also filed by Wausau on July 9, 1991. Indeed, in its prayer for relief in Counts I–III, Wausau seeks to "[e]njoin defendants from denying Wausau's Petition for Reimbursement of Costs under § 106(b)(2) [42 U.S.C. § 9606(b)(2)]." Under these circumstances, even if CERCLA did not mandate exhaustion, Wausau, having initiated administrative remedies, must allow the EPA to render a decision regarding the petition for reimbursement. *Cf. McGinty v. United States Dep't of Army*, 900 F.2d 1114, 1117 (7th Cir.1990) (Once government employee, in age discrimination suit, has initiated administrative remedies, they must be exhausted before suit may be filed.). Accordingly, Count X of Wausau's second-amended complaint is dismissed without prejudice.

## IV. INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

### A. Personal Jurisdiction over Defendant Reilly

Although acknowledging that he was personally served with the summons and second-amended complaint on November 27, 1991, Reilly argues that this court lacks personal jurisdiction over him—a non-resident defendant. As recognized and argued by the parties, the question of whether this court may exercise personal jurisdiction over Reilly is a question of due process. In order to comport with the dictates of the United States Constitution, Reilly must "have certain minimum contacts" with Illinois "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct.

2174, 2183, 85 L.Ed.2d 528 (1985) (The "constitutional touchstone" is "whether the defendant purposefully established 'minimum contacts' in the forum State."); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980).

■ It is "foreseeability," and not physical presence, that is critical; the due process analysis entails a determination of whether Reilly's "conduct and connection with the forum State are such that [they] should reasonably anticipate being hauled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. at 567; *see also Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 283 (7th Cir.1990). Contacts with Illinois that are "random" or merely "fortuitous" will not be sufficient to "establish that exercise of [Illinois'] jurisdiction was foreseeable." *Heritage House Restaurants*, 906 F.2d at 283 (citation omitted). In other words, the minimum contacts requirement is satisfied if there is " 'some act by which [Reilly] purposefully avails himself of the privilege of conducting activities within [Illinois].'" *FMC Corp. v. Varonos*, 892 F.2d 1308, 1313 (7th Cir.1990) (quoting *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 592 (7th Cir.1984)).

■ In light of the principles discussed above, we conclude that subjecting Reilly to jurisdiction does not offend due process. Reilly is the Administrator of the EPA, working out of Washington, D.C. As Administrator, Reilly supervises the activities of each of the EPA regional offices, including that of Region V located in Chicago, Illinois. By reason of his ultimate authority over the actions taken out of Region V, Reilly should have reasonably foreseen being subjected to the jurisdiction of an Illinois court. *See Green v. Carlson*, 581 F.2d 669, 676 (7th Cir.1978) (In an action for inappropriate medical care, the court possessed personal jurisdiction over the Director of the Federal Bureau of Prisons and the Assistant Surgeon General of the United States because the former bore responsibility for the management of the federal prison system and the later was re-

sponsible for monitoring the medical services within the prison.), *aff'd*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *cf. The Superior Oil Co. v. Andrus*, 656 F.2d 33, 41 (3d Cir.1981) (For purposes of laying venue, government defendants not personally present in Delaware are nonetheless "found" in Delaware "by reason of their ultimate responsibility for the services rendered there.").

### B. Absolute Immunity to State–Law Claims

■ Defendants argue that they are absolutely immune to the state-law claims (*i.e.*, state-tort claims and state-constitutional claims) asserted against them in their individual capacities, as the exclusive remedy for such claims lies against the United States pursuant to 28 U.S.C. § 2679(d). That provision provides in pertinent part:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1) (Supp.1991). The Attorney General's designee has made the required certification that the actions of the defendants were within the scope of their employment. The individual defendants now move to dismiss these claims and substitute the government as the sole defendant. The sole issue respecting these claims is whether the defendants were acting within the scope of their employment at the time they arose. Wausau challenges the Attorney General's certification, and we will review the issue *de novo. See Hamrick v. Franklin*, 931 F.2d 1209, 1211

---

(7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 200, 116 L.Ed.2d 159 (1991).[6]

It is undisputed that the present scope of employment question is governed by the state law of *respondeat superior*. Further, the parties each argue in reference to Illinois law and, as such, we will assume for the purposes of this motion that Illinois law controls. Under Illinois law,

> an employer may be liable for the negligent, wilful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer; however, the employer is not liable to an injured third party where the acts complained of thereby were committed solely for the benefit of the employee.

*Randi F. v. High Ridge YMCA*, 170 Ill. App.3d 962, 964, 120 Ill.Dec. 784, 786, 524 N.E.2d 966, 968 (1st Dist.1988) (citing *Webb v. Jewel Companies, Inc.*, 137 Ill.App.3d 1004, 1006, 92 Ill.Dec. 598, 600, 485 N.E.2d 409, 411 (1st Dist.1985), and cases cited therein). Thus, "if an employee commits an intentional tort with the dual purpose of furthering the employer's interest and venting personal anger, *respondeat superior* may lie; however, if the employee acts purely in his own interest, liability under *respondeat superior* is inappropriate." *Id.* 170 Ill.App.3d at 967, 120 Ill.Dec. at 788, 524 N.E.2d at 970.

■ Wausau's second-amended complaint does not contain a single factual allegation to indicate that any of the defendants were acting solely for their own interest. At best, accepting all factual allegations as true and drawing all reasonable inferences therefrom, the three individual defendants may have acted under the type of dual purpose described in *Randi F.*— conduct under which *respondeat superior* may lie. Although the issue of whether an employee has departed from the scope of employment by acting purely for his own interest, rather than at least in part for the employer, is normally a question for the

---

**6.** In this review, plaintiff bears the burden of showing that the defendants' actions were not taken within the scope of their employment. *Hamrick*, 931 F.2d at 1211 (citing *S.J. & W.*

*Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir.1990), *amended*, 924 F.2d 1555 (11th Cir.1991)).

jury, Wausau's mere conclusory allegations that defendants acted "arbitrarily, unreasonably, maliciously and in reckless disregard of Wausau's rights" are insufficient to meet its present burden. Accordingly, we dismiss each of Wausau's state-law claims against the individual defendants and substitute the United States as the sole defendant to those claims.[7] Thus, of the claims against the individual defendants, only those brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), remain.

### C. Wausau's *Bivens* Claims

In Counts I–III of its second-amended complaint, Wausau names the EPA officials in their individual capacities for their purportedly unconstitutional administration of CERCLA. Specifically, Wausau claims that defendants violated its right to procedural due process in that they designated Wausau a PRP and respondent to the § 9606 order without adequate pre- or post-deprivation process, and because they violated pertinent regulations, guidelines and directives relating to CERCLA. Additionally, defendants allegedly violated Wausau's rights to substantive due process and equal protection of the law because the designation was arbitrary. The individual defendants now move to dismiss these claims, arguing as follows: First, Wausau has failed to allege specific, personal misconduct on the part of each defendant. Second, there are special factors in the present litigation that counsel against providing Wausau with a separate damages remedy inferred directly under the United States Constitution. Finally, the individual defendants are shielded from the constitutional claims described above under the doctrine of qualified immunity. Because we agree that Wausau has failed to allege sufficient facts to establish personal re-

sponsibility on the part of the individual defendants, we do not reach defendants' other arguments.

 It is well established that *Bivens* actions and actions taken under 42 U.S.C. § 1983 "are identical save for the replacement of a state actor (§ 1983) by a federal actor (*Bivens*)." *Bieneman v. City of Chicago*, 864 F.2d 463, 469 (7th Cir.1988), cert. denied, 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989). Like a defendant sued in his individual capacity under § 1983, the individual defendants in this case can only be held liable under *Bivens* for their individual wrongdoing. *See Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986); *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir.1985), cert. denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). Thus, as is the case under § 1983, *Bivens* does not recognize the doctrine of superiors' liability, *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir.1984), or the doctrine of *respondeat superior. Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).

Furthermore, "a showing of mere negligence on the part of [federal] officials is insufficient to implicate an individual's due process rights for purposes of a claim under [*Bivens*]." *Rascon*, 803 F.2d at 273 (citing *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Rather, to prevail Wausau must allege "that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Id.* at 274; *see also Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir.1985).

 In seeking leave to file the present second-amended complaint, Wausau stated that they wished

7. We note that, contrary to Wausau's contention: "It is inconsistent to attempt to bring state law claims against the United States under the [Federal Torts Claims Act] [*see* Counts V and VI], which can be maintained only upon an allegation that the employees causing the injury were acting within the scope of their employment, and attempting to maintain the same state

law claims against individual employees by asserting that they *were not* acting within the scope of their employment." Individual Defendants' Reply at 8 n. 4. While such alternate pleading is acceptable under the Federal Rules of Civil Procedure, ultimately, Wausau could not prevail under both theories.

to include in the new pleading, among other things, allegations of defendants' "personal responsibility," *i.e.,* allegations that the individual members of the United States Environmental Protection Agency knew, directed or were otherwise involved in, the acts giving rise to Wausau's causes of action, or that they acted or failed to act with a deliberate or reckless disregard for Wausau's constitutional rights.

Wausau's Supplemental Memorandum in Support of Its Motion for Leave to File a Second–Amended Complaint at 2. With respect to defendants Reilly and Adamkus, Wausau's pleading is devoid of a single factual allegation giving rise to an inference that either defendant bore any personal responsibility for the alleged constitutional deprivations. Instead, Wausau merely states that both Reilly and Adamkus "knew or should have known or, directed, approved, acquiesced in, ordered, sanctioned, set or promoted policy relating to, or otherwise participated in or was involved in, the acts of which Wausau complains, and/or [defendants] acted or failed to act with a deliberate or reckless disregard of Wausau's constitutional rights." This boilerplate amendment, while demonstrating a cognizance of the relevant law, is insufficient to withstand the instant motion to dismiss.

 Concerning defendant Constantelos, Wausau's allegations are confined to the fact that Constantelos, as the Director of the Waste Management Division of the EPA for Region V, signed the § 9606 order. This fact alone, however, is insufficient to establish the requisite personal liability for any of the purported constitutional violations. That Constantelos

signed the order sheds no light on his involvement in the investigation culminating in that order. The only reasonable inference to be drawn from Constantelos' signature is that he had knowledge that Wausau, along with others, was named as a PRP and a respondent. Even if this knowledge should have alerted him that Wausau's constitutional rights were being infringed, mere knowledge of a constitutional deprivation is inadequate to hold administrators liable in their individual capacities. *See Crowder v. Lash,* 687 F.2d 996, 1005–06 (7th Cir.1982) (mere fact that the Commissioner of Corrections, through communications with his subordinates and oral and written communication from the plaintiff, was aware of the conditions in plaintiff's unit is insufficient to establish personal liability). Further, without any indication of the volume of orders passing through Constantelos at any given time, his signature alone does not give rise to an inference of deliberate or reckless disregard of Wausau's constitutional rights. To hold otherwise would be tantamount to authorizing personal liability on the part of any Director for any constitutional violation flowing from each and every order passing through his office. This is precisely the type of broad theory of liability rejected by the Seventh Circuit in *Crowder. See id.* at 1006.[8]

## V. CONCLUSION

For the reasons stated above, Wausau's claim for reimbursement under § 9606(b)(2) of CERCLA (Count X), is dismissed without prejudice for failure to exhaust administrative remedies. The federal defendants' motion to dismiss is denied with respect to all

---

8. Wausau, relying on *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979), and *Chavis v. Rowe,* 643 F.2d 1281, 1290 (7th Cir.), *cert. denied,* 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981), argues that, if its allegations are factually inadequate, it should be permitted additional discovery prior to dismissal. In both *Owens* and *Chavis,* however, the courts were faced with a *pro se* plaintiff—a circumstance mandating "less stringent standards than [in cases of] formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594,

596, 30 L.Ed.2d 652 (1972); *see also Maclin v. Paulson,* 627 F.2d 83, 86 (7th Cir.1980). Wausau filed its original complaint nine months ago, and has had more than ample time to discover each defendant's role in the process culminating in the § 9606 order. As put by Judge Posner: "[T]he plaintiff is the master of his complaint. If he proceeds on a theory that he can not substantiate factually, he is barred because of that failure of proof." *Duckworth v. Franzen,* 780 F.2d 645, 650 (7th Cir.1985), *cert. denied,* 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).

other arguments. Given the reasonable foreseeability that defendant Reilly could be subjected to the jurisdiction of an Illinois court, his motion to dismiss for lack of personal jurisdiction is denied. Concluding that each of the individual defendants acted within his scope of employment, we dismiss all of the state-law claims against those defendants and substitute the United States as the sole defendant. Finally, Wausau's *Bivens* claims against each of the individual defendants is dismissed for failure to plead facts sufficient to support a finding of personal responsibility. It is so ordered.