EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, a mutual insurance corporation, Plaintiff,

v.

William J. CLINTON, in his official capacity as President of the United States, et al., Defendants.

No. 93 C 1366.

United States District Court, N.D. Illinois, E.D.

March 4, 1994.

Daniel Charles Murray, Frederick S. Mueller, William J. Anaya, Robert Walter York, Johnson & Bell, Ltd., Chicago, IL, for plaintiff.

James Michael Kuhn, U.S. Atty's. Office, Chicago, IL, Alan D. Greenberg, U.S. Dept. of Land & Natural Resources, Washington, DC, for defendants William J. Clinton, in his official capacity as President of U.S., Carol M. Browner, as Adm'r of U.S. E.P.A., Valdas V. Adamkus, as Regional Adm'r, of Region V of U.S. E.P.A., Bruce M. Diamond, as Director of Office of Waste Programs Enforcement of U.S. E.P.A. and E.P.A.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Employers Insurance of Wausau brings this three count action to recover the funds that it expended cleaning up a contaminated oil recycling facility in Romulus, Michigan. Presently before the court is defendants'[1] motions for summary judgment and a protective order. For the reasons set forth below, defendants' motion for summary judgment is granted and motion for a protective order is denied as moot.

1. For the purposes of this opinion, "defendants" shall refer to the United States Environmental Protection Agency and each of the individual defendants (William J. Clinton, Carol Browner, Valdas V. Adamkus, and Bruce M. Diamond) in their official capacities.

2. We set forth the facts only as relevant to the issues raised in the present motions. For a more detailed recitation of the facts underlying this action, see this Court's opinion in the related case *Employers Insurance of Wausau v. Bush,* 791 F.Supp. 1314 (N.D.Ill.1992). We also note at this juncture that defendants failed to submit a statement of material facts as required by Rule 12(m) of the General Rules of the United States District Court for the Northern District of Illinois, which alone would justify our denial of the motion. We will nonetheless consider defendants' motion for several reasons. First, both parties have included extensive factual information in the briefs submitted to this court, making a 12(m) statement essentially duplicative. Second, defendants have indicated that if we were to deny their motion on this ground, they would resubmit the motion with the statement of facts. Our action would therefore simply delay consid-

## I. Factual Background[2]

On August 24, 1987, fire struck and destroyed a building located in Wyandotte, Michigan. The building's occupant held a policy with plaintiff Employers Insurance of Wausau ("Wausau"), which covered certain perils, including fire, as well as the expense of debris removal resulting from such perils. At the Wyandotte property, this debris included several electrical transformers. In a settlement with the policyholder, Wausau agreed to have certain fluids and oils drained from the transformers and removed from the site. In April, 1989, seven hundred gallons of fluids were removed from the transformers and transported to an oil recycling facility in Romulus, Michigan, where the fluids were placed in process tanks for recycling.

The following month, it was discovered that the Romulus facility was contaminated with polychlorinated biphenyls ("PCBs")[3] and volatile organic compounds ("VOCs").[4] The source of the PCB contamination was traced to the oil which had been used in the transformers at the Wyandotte building. On September 11, 1989, the Environmental Protection Agency ("EPA") designated Wausau as a potentially responsible party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended by the Superfund

eration of an otherwise fully briefed and annotated motion. Finally, and perhaps most importantly, Wausau has not objected to defendants' failing in this regard. While we do not condone defendants' failure to comply with the rules of this district, we choose to exercise our discretion and consider this motion.

3. PCBs are a group of chemicals used primarily as coolants in electrical equipment. They are "among the most hazardous man-made chemical substances." *Environmental Transp. Systems, Inc. v. Ensco, Inc.,* 969 F.2d 503, 505 n. 1 (7th Cir.1992).

4. VOCs are "vapors emitted from substances such as gasoline and solvents." *Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envtl. Conservation,* 810 F.Supp. 1331, 1337 (N.D.N.Y. 1993). They include benzene and methylene chloride, and cause adverse human health effects such as cancer. *See Natural Resources Defense Council, Inc. v. EPA,* 824 F.2d 1211 (D.C.Cir. 1987).

Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. § 9601 *et seq.*,[5] and demanded Wausau's participation in the cleanup. Wausau did not respond, and in November, 1989, the EPA issued a unilateral administrative order directing Wausau and the other involved parties to begin emergency cleanup measures. Wausau strenuously objected, claiming that the EPA's characterization of Wausau's role in the transportation and disposal of the fluids was "materially incorrect," "erroneous, arbitrary and wrongful." After some further wrangling, the EPA filed an administrative action against Wausau under the Toxic Substance Control Act, 15 U.S.C. § 2601 *et seq.*, in an effort to force Wausau to comply with the order. Without admitting any responsibility, Wausau relented and submitted an Emergency Response Action Plan ("ERAP"), setting forth the manner in which it would comply with the order. The EPA approved Wausau's ERAP on February 26, 1990.

The Order itself listed thirty-three findings which detailed the various parties' involvement in the PCB contamination at the Romulus facility. It further specified that "hazardous substances" were present at the site, both due to the PCB contamination and because there existed waste in drums which contained high levels of VOCs. Accordingly, the Order required the potentially responsible parties to:

   a.  Provide site security and develop and implement a site safety plan.
   b.  Pump, treat, test, and discharge contaminated water as necessary.
   c.  Pump and consolidate all contaminated oils and incinerate them off site.
   d.  Pump out sludges and dispose of them properly.
   e.  Excavate contaminated soils and dispose of them properly.
   f.  Pump and treat liquids in the dikes on site.
   g.  Treat lagoon water and discharge.
   h.  Sample, characterize, and dispose of drums of waste on site.

   i.  Conduct post cleanup sampling.

In addition, the order specified requirements for the disposal and treatment of "[a]ll materials containing hazardous substance, pollutants or contaminants removed pursuant to this Order." These requirements of the Order were not limited to PCB-contaminated areas.

The ERAP, drafted by Wausau and approved by the EPA, was expressly designed to "comply with the Order to the extent technically feasible under climatic conditions existing at the Site...." The ERAP is somewhat more PCB specific, setting forth particular requirements with respect to PCB contamination. However, it also contains several broad statements about Wausau's obligations at the Site. These statements include:

   Forty-eight drums are reportedly located at the Site. Immediately following or concurrent with tank sampling, samples will be collected from each drum.... The objective of drum sampling and analysis is to ascertain the compatibility of the drum contents and to characterize compatible waste streams to the extent necessary for ultimate treatment and/or disposal. Once compatible waste groups have been identified, representative composite samples will be generated in the laboratory for waste characterization testing.

   . . . .

   Surface water bodies on Site will be sampled, in accordance with the Sampling and Analysis Plan. Each discrete surface water body will be sampled immediately following completion of tank and drum waste sample collection.

   . . . .

   Sediment samples will be collected from on and off-Site lagoons, drainage wales and other surface water bodies that are potential receptors of contaminated materials.

   . . . .

   Immediately following, or concurrent with, sample collection, laboratory chemi-

---

**5.** We shall refer to the relevant sections of CERCLA as "CERCLA § _," using the section numbers employed in the United States Code rather than those used in CERCLA's internal numbering system.

cals potentially present in the former laboratory building will be inventoried for disposal. When necessary, containers will be sampled for characterization.

. . . .

The Contractor will transfer contaminated oils from the storage tanks to approved hazardous waste liquid tankers. Liquids will be removed from the tanks utilizing a vacuum truck, portable or in-line pumps.

. . . .

Following identification of unique waste streams, compatible drummed wastes will be blended and removed off Site for treatment or disposal in strict accordance with State and Federal regulations. The final disposal mode selected for each waste stream will be based on an assessment of the characterization data and acceptance by approved treatment or disposal facilities. Empty drums will be crushed and disposed of as RCRA hazardous waste bulk solids.

Finally, the ERAP expressly amended the Order to allow Wausau 180 days to complete its cleanup activities.

Following the EPA's approval of the ERAP, Wausau began its cleanup. However, in several telephone calls and letters to the EPA, Wausau indicated that it did not believe that it would be responsible for cleaning up any non-PCB contamination under the Order and the ERAP. In response, the EPA consistently maintained that both the Order and the ERAP were worded broadly and were not limited to PCB contamination, and that Wausau was required to clean up *all* hazardous substances located at the Site. However, Wausau persisted in its interpretation of the Order and ERAP, and claimed that it completed the prescribed cleanup on January 24, 1991, some 331 days after approval of the ERAP, or 151 days late. At no time did Wausau submit a written request for an extension of time, as required by the Order.

■ On March 22, 1991, Wausau submitted a petition for reimbursement of its response costs, which exceeded $2,000,000, pursuant to CERCLA § 9606(b)(2)(A). The EPA, however, informed Wausau that it had not completed the cleanup required, and detailed those tasks which remained undone. Wausau submitted a supplemental report in support of its claim that it had fulfilled its obligation at the Site. Disagreeing, the EPA finished the cleanup on October 25, 1991. On June 2, 1992, the EPA issued a preliminary decision denying Wausau's petition for reimbursement based upon Wausau's failure to complete the required cleanup, and invited Wausau to respond. Wausau submitted forty-five pages of comments and hundreds of pages of exhibits on September 14. After reviewing these comments and documents, the EPA, on January 28, 1993, issued its final decision denying Wausau's petition for reimbursement. Wausau then filed the present case, seeking review of the EPA's decision denying its petition for reimbursement, and requesting reimbursement of its cleanup costs.[6]

## II. Statutory Background

■ Enacted in 1980, "CERCLA was designed 'to bring order to the array of partly redundant, partly inadequate federal hazardous substances clean up and compensation laws.'" *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1386 (5th Cir.1989) (quoting *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1040 (2d Cir.1985)). The primary purpose of CERCLA is "the prompt cleanup of hazardous waste sites." *J.V. Peters & Co. v. EPA*, 767 F.2d 263, 264 (6th Cir.1985). To this end, upon a determination that there is an actual or threatened release of a hazardous substance,[7] CERCLA gives

---

**6.** Wausau would also have us consider its reimbursement petition on the merits, determining whether Wausau is a liable party, and if so, to what extent. Even if we concluded that the EPA had erred in refusing to consider Wausau's petition, however, we would remand the case to the EPA for consideration of the petition on the merits, as the EPA has not previously considered the merits of Wausau's reimbursement claim,

and that determination is initially the province of the EPA. *See, e.g., Camp v. Pitts*, 411 U.S. 138, 142–43, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973).

**7.** CERCLA's definition of "hazardous substances" is broad, and includes hazardous wastes listed under five other federal environmental statutes, including the Resource Conservation

the EPA the authority (1) to take direct response action to clean up a site and later seek reimbursement from responsible parties, 42 U.S.C. § 9604(a) (1988), or (2) to require those responsible parties to conduct the cleanup themselves.[8]  *Id.* § 9606(a); *see also Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1324 (7th Cir.1990).  In order to "encourage potentially responsible parties to conduct a cleanup expeditiously and postpone litigation about responsibility to a late time," *Bethlehem Steel,* 918 F.2d at 1324, Congress amended CERCLA to give those parties that "receive and comply" with a cleanup order the right to petition the EPA for reimbursement.  42 U.S.C. § 9606(b)(2)(A) (Supp. 1991).  To obtain reimbursement, a petitioner must establish (1) "by a preponderance of the evidence that it is not liable for response costs under section 9607(a)· of [CERCLA] and that the costs for which it seeks reimbursement are reasonable in light of the action required by the relevant order," *id.* § 9606(b)(2)(C), or (2) "on the administrative record, that the [EPA's] decision in selecting the response action ordered was arbitrary and capricious or was otherwise not in accordance with law." *Id.* § 9606(b)(2)(D).  If the EPA refuses to grant all or part of a § 9606(b)(2) petition for reimbursement, "the petitioner may within 30 days of receipt of such refusal file an action ... in the appropriate United States district court seeking reimbursement." *Id.* § 9606(b)(2)(B).

### III.  Discussion

■ The first issue we must consider is whether the EPA's determination that Wausau failed to comply with the Order is properly subject to review by this court, and if so, what the appropriate standard of review is.  As noted above, CERCLA § 9606(b)(2) provides the authority for reimbursement actions.  That section reads, in relevant part:

(A) Any person who receives and complies with the terms of any order issued under subsection (a) of this section may, within 60 days after completion of the required action, petition the President for reimbursement from the Fund for the reasonable costs of such action, plus interest. ...

(B) If the President refuses to grant all or part of a petition made under this paragraph, the petitioner may within 30 days of receipt of such refusal file an action against the President in the appropriate United States district court seeking reimbursement from the Fund.

(C) Except as provided in subparagraph (D), to obtain reimbursement, the petitioner shall establish by a preponderance of the evidence that it is not liable for response costs under section 9607(a) of this title and that costs for which it seeks reimbursement are reasonable in light of the action required by the relevant order.

(D) A petitioner who is liable for response costs under section 9607(a) of this title may also recover its reasonable costs of response to the extent that it can demonstrate, on the administrative record, that the President's decision in selecting the response action ordered was arbitrary and capricious or was otherwise not in accordance with law.  Reimbursement awarded under this subparagraph shall include all reasonable response costs incurred by the petitioner pursuant to the portions of the order found to be arbitrary and capricious or otherwise not in accordance with law.

In addition, CERCLA § 9613(j), entitled "Judicial review," provides:

(1) Limitation

In any judicial action under this chapter, judicial review of any issues concerning the adequacy of any response action taken or ordered by the President shall be limited to the administrative record.  Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court.

(2) Standard

In considering objections raised in any judicial action under this chapter, the court

and Recover Act, 42 U.S.C. § 6901 *et seq.  See* CERCLA § 9601(14).

**8.**  We note that most of the authority granted under CERCLA is explicitly imparted to the President.  However, the President has delegated the administration of CERCLA to the Administrator of the EPA.  *See* Exec.Order No. 12,580, 50 Fed.Reg. 2923 (1987), *reprinted in* 42 U.S.C. § 9615 (Supp.1991).

shall uphold the President's decision in selecting the response action unless the objecting party can demonstrate, on the administrative record, that the decision was arbitrary and capricious or otherwise not in accordance with law.

It is thus apparent that CERCLA provides for judicial review under certain circumstances. That is, a party may obtain review of the EPA's determination regarding its liability pursuant to CERCLA § 9606(b)(2)(C), as well as the proper scope of that liability pursuant to CERCLA §§ 9606(b)(2)(D) & 9613(j). However, there is no explicit provision for review of the EPA's determination that a party did not "comply" with the relevant Order, and is thus not entitled to consideration of its petition on the merits. Indeed, there is nothing in the statute to indicate that the drafters of CERCLA even contemplated that this may be an issue; rather, their sole focus was providing for review of the EPA's ruling on the merits of a reimbursement petition.[9]

Of course, the determination that a petitioner has "receive[d] and complie[d]" with an Order is a necessary precursor to the EPA's consideration of a petitioner's liability and the scope of the response action. It is therefore possible to argue that the provisions allowing for review of these issues necessarily encompass the EPA's ruling on whether the petitioner has "complie[d]" with the Order in the first instance. This argument, however, is unconvincing, because, though it would provide the authority for judicial review of the compliance issue, it would also offer competing standards of review. That is, in considering whether a petitioner is properly liable for response costs, a reviewing court is to make its decision based upon a preponderance of the evidence standard. CERCLA § 9606(b)(2)(C). *See also Kelley v. EPA*, 15 F.3d 1100, 1106 (D.C.Cir. 1994). On the other hand, a court reviews the scope and reasonableness of the ordered response merely to determine whether the EPA's actions were "arbitrary and capricious." CERCLA §§ 9606(b)(2)(D) & 9613(j). As a result, even if we were to infer the authority for judicial review of the compliance issue, we would be left with no direction as to the appropriate standard of review. Indeed, this quandary is exemplified by the parties' assertions in the present case. While the EPA maintains that it is entitled to the highly deferential "arbitrary and capricious" standard, Wausau claims we should review the EPA's decision *de novo*. We are unwilling to adopt either approach, at least based upon the provisions of CERCLA. Because we conclude that the statute fails to provide for judicial review in this circumstance, we instead default to the provisions of the Administrative Procedure Act.

■ The Administrative Procedure Act ("APA") provides for judicial review of agency actions. *See* 5 U.S.C. § 701 *et seq.* Specifically, APA § 704 states that "final agency action for which there is no other adequate remedy in a court [is] subject to judicial review."[10] The statute also sets out the proper scope of review:

9. We are equally unable to look to other courts for guidance, as this is apparently a case of first impression. Indeed, the only issue regarding the "receives and complies" language which has arisen to date is its impact on the retroactivity of the reimbursement provision as a whole, which was added in 1986. The EPA has consistently ruled that a party must have both received and complied with the Order after the effective date of the amendments allowing for reimbursement in order to qualify for reimbursement, a position which has been upheld in the federal courts. *See, e.g., Wagner Seed Co. v. Bush*, 946 F.2d 918 (D.C.Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992); *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323 (7th Cir.1990). In the present action, the EPA relies heavily upon the D.C. Circuit's ruling in *Wagner* that the "interpretation of the 'receives and complies' re-

quirement of [CERCLA § 9606(b)(2)(A)] is the agency's responsibility in the first instance." *Wagner*, 946 F.2d at 923. However, that statement arose in the context of the retroactivity of the provision, a question of statutory interpretation. Under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), an agency's interpretation of a statute it administers is entitled to considerable deference. We, however, are not faced with a question of statutory interpretation, but rather with the scope of the Order and Wausau's compliance, or lack thereof, with that Order. Accordingly, *Wagner* and *Bethlehem Steel* provide us with little guidance.

10. The APA does not apply, however, "to the extent the relevant statute 'preclude[s]' judicial review." *Block v. Community Nutrition Inst.,*

. The reviewing court shall—

.　　.　　.　　.　　.

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law; [or]

.　　.　　.　　.　　.

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

APA § 706. With respect to the issue of whether Wausau complied with the Order, and was thus entitled to consideration of its reimbursement petition on the merits, we conclude that the appropriate standard of our review is whether the EPA's ruling was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," the familiar APA standard of review, or that it failed to meet some statutory, constitutional, or procedural requirement. Wausau would apparently prefer that we apply the standard set forth in subparagraph (F).[11] However, as the D.C. Circuit has noted:

467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984) (quoting APA § 701(a)(1)). Admittedly, CERCLA does place restrictions on the availability of judicial review. CERCLA § 9613(h) states that "[n]o Federal court shall have jurisdiction ... to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following...." The section goes on to list five exceptions. This preclusion of judicial review does not preempt the APA in the present circumstance, since we are passing on neither an action selected under APA § 9604 nor an order under § 9606(a). Rather, the limited issue we consider in this action is whether Wausau *complied* with the relevant order, thus entitling it to consideration of its reimbursement petition. Because CERCLA does not preclude review of this issue, and because it does not expressly provide for it, consideration under the APA is appropriate.

[D]e novo review is only allowed under this rule in two limited instances: where the agency action is adjudicatory in nature and the fact finding procedures are inadequate; or where issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action.

*Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 285 (D.C.Cir.1981) (citations omitted); *see also Citizens of Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Wausau can not fit itself into either exception. The only potential argument is that the EPA's fact finding procedures are inadequate. However, in making its decision, the EPA compiled a voluminous administrative record regarding the cleanup activities at the Site. In addition, Wausau was invited to and did respond to the EPA's preliminary decision denying its petition. Indeed, it submitted a forty-five page written response to the decision, accompanied by hundreds of pages of exhibits, all of which were placed in the administrative record. Accordingly, any argument that the fact finding procedures are inadequate is unavailing, and it is therefore clear that this highly intrusive standard of review does not apply. We will therefore apply the more common standard, and consider whether the EPA's conclusion that Wausau failed to comply with the Order was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[12]

**11.** We note that, although the EPA challenged Wausau's APA-based claim in its motion for summary judgment, Wausau failed to respond to the EPA's arguments. Indeed, Wausau provides no analysis of the appropriate APA standard of review. Instead, it notes that the issue of *liability* is subject to de novo review, and, apparently by extension, concludes that the initial determination of compliance with the Order is likewise subject to de novo review. As discussed further below, we reject Wausau's attempted extension.

**12.** Our conclusion that the "arbitrary and capricious" standard applies is further supported by language in *Wagner Seed Co. v. Bush,* 946 F.2d 918 (D.C.Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992). There the court stated, albeit in dicta, that it "would be truly bizarre ... for a court to determine *de novo* [the issue of "whether a party has 'complied' with the agency's clean-up order"], which may involve both technical and policy questions with-

To determine whether the EPA's decision fails under this standard, we must consider

> whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Overton Park,* 401 U.S. at 416, 91 S.Ct. at 824 (citations omitted). The basis for this review is the "whole record or those parts of it cited by a party," i.e., the administrative record compiled and relied upon by the agency. APA § 706. *See also Overton Park,* 401 U.S. at 419–20, 91 S.Ct. at 825–26. In the present case, we can not say that the EPA made a "clear error in judgment" in concluding that Wausau failed to comply with the Order. We are forced to confront essentially two issues in this analysis. First, we must determine whether the EPA properly characterized the scope of the Order and the ERAP, and second, we must determine whether Wausau fully complied with the Order and ERAP so characterized. With respect to the first issue, we find entirely supportable the EPA's conclusion that the Order and ERAP applied to all hazardous wastes, and not just those which evidenced high levels of PCB contamination. As noted above, the Order is worded very broadly, as is the CERCLA definition of hazardous waste. And although the implementing ERAP does prescribe several actions which relate directly and exclusively to PCB contamination, it also includes broad remedial directives in other areas. Furthermore, in extensive post-ERAP approval correspondence with Wausau, the EPA repeatedly articulated that the scope of the Order and ERAP included all hazardous wastes, and not merely those contaminated by PCBs. Accordingly, we conclude that the EPA's interpretation of the breadth of the Order and ERAP was not clear error.

Wausau maintains, however, that the EPA lacks the authority to draft an Order which demands that a party clean up waste for which that party is not even potentially responsible. Specifically, Wausau argues that

> [t]he Order can not be interpreted to have included uncontaminated oils, soils, materials and structures, or to have required Plaintiff to perform activities not identified in the Order or not associated with Plaintiff's purported liability at the Site. To the extent that the Agency is interpreting contamination beyond the contaminants of concern specifically identified in the Order, *or contaminants not associated with Plaintiff's purported liability,* that interpretation is arbitrary and capricious and not otherwise in accordance with the law.

Plaintiff's Response to Defendant's Motion for Summary Judgment at 5–6 (emphasis in original). We disagree. Of course, only a party who is actually liable for contamination can ultimately be made to pay for the clean-up of that contamination. However, CERCLA evidences Congress' decision to have hazardous waste sites cleaned as quickly and thoroughly as possible, and defer issues of liability until after the remedial actions have been completed. *See J.V. Peters & Co. v. EPA,* 767 F.2d 263, 264 (6th Cir.1985) (purpose of CERCLA is "prompt cleanup of hazardous waste sites"). As a result, it is not inconsistent with the broad goals of the statute to require a party who is potentially responsible for some contamination at a particular site to clean up the entire site, and then petition the government for reimbursement of those costs attributable to any portion of the contamination for which the party was not actually responsible. Indeed, as discussed above, the reimbursement provisions of CERCLA clearly contemplate the very situation we face here. A party is entitled to reimbursement if that party is not liable, or, even if the party is liable, if the response action ordered was arbitrary and capricious or otherwise not in accordance with law. CERCLA §§ 9606(b)(2)(C) & (D). These provisions provide clear support for the

in the expertise of the agency." *Id.* at 921. Accordingly, we reject Wausau's claim that it is

entitled to de novo review of this issue.

EPA's contention that it may require a party to submit to an Order that goes beyond that party's potential responsibility, since that party, if it completes the required cleanup, will be reimbursed to the extent the Order required cleanup beyond the scope of the party's actual legal obligations.[13] Wausau may not like the remedial scheme set up by CERCLA, but we are bound by the decision that Congress has made.[14] We therefore conclude that the EPA's interpretation of CERCLA and the scope of the Order and ERAP was legitimate.

We now turn to consideration of Wausau's actual activities at the Site. The EPA concluded that Wausau failed to complete a number of activities which were required by the Order and ERAP. Although Wausau disputes some of the EPA's claims in this regard, it is clear from Wausau's own Response Action Report ("RAR"), filed after its putative completion of the cleanup, that certain hazardous substances and wastes remained on the Site. For example, Table 5 of the RAR, entitled "SUMMARY OF NON-PCB CONTAMINATED TANKED MATERIALS CURRENTLY REMAINING ON SITE," lists over 10,000 gallons of used oil, water, and sludge which Wausau left in tanks at the Site. Although these materials did not contain high levels of PCBs, such materials contain other CERCLA-listed hazardous substances. *See, e.g. United States v. Western Processing Co.*, 761 F.Supp. 713, 721 (W.D.Wash.1991); *Washington v. Time Oil Co.*, 687 F.Supp. 529, 532 (W.D.Wash.1988). *See also Cose v. Getty Oil Co.*, 4 F.3d 700, 706 (9th Cir.1993). Both the Order, at page 8, and the ERAP, at pages 19–20, require removal of contaminated oils. Likewise, Wausau does not dispute that it left fourteen drums of sulfuric acid at the Site, although the Order, at page 8, and the ERAP, at page 20, require removal of drummed wastes. Because of its corrosive properties, sulfuric acid qualifies as a hazardous waste under CERCLA. *See* CERCLA § 9601(14). Based upon these undisputed facts, it is apparent that Wausau failed to comply with the Order and ERAP.[15] Because compliance with the Order is, under CERCLA, a prerequisite to entitlement to reimbursement, Wausau is precluded from seeking reimbursement from the Fund. Accordingly, defendants' motion for summary judgment is granted.[16]

## IV.  Conclusion

For the reasons set forth above, defendants' motion for summary judgment is granted and defendants' motion for a protective order is denied as moot. It is so ordered.

---

**13.** *See, e.g., North Shore Gas Co. v. EPA*, 930 F.2d 1239, 1244 (7th Cir.1991) ("If the court found that the order was arbitrary and capricious, it could require the EPA to reimburse [the petitioner] for the added expenses caused by the order, or by the order's arbitrary and capricious component if the order was not arbitrary and capricious as a whole.") (citing CERCLA § 9606(b)(2)(D)).

**14.** Congress' authority is, of course, limited by the Constitution. However, Wausau has challenged the constitutionality of the relevant provisions of CERCLA in the related action *Employers Insurance of Wausau v. Browner*, 848 F.Supp. 1369 (N.D.Ill.1994), and we shall therefore consider Wausau's constitutional objections in the context of that case.

**15.** We also note that Wausau did not timely complete its activities at the Site. Although the Order was amended to allow Wausau to complete the cleanup 180 days after approval of the ERAP, Wausau did not finish its activities until 331 days after approval. In addition, it never filed a written request for an extension, in violation of the Order. This delay provides additional support for the EPA's conclusion that Wausau failed to "comply" with the Order.

**16.** Defendants have also moved for a protective order precluding discovery in the present action, claiming that our review should be based solely upon the administrative record. As noted above, we agree, and based upon that review grant summary judgment to defendants. Accordingly, the motion for a protective order is now moot.