EMPLOYERS INSURANCE OF WAU-
SAU A MUTUAL COMPANY, a mutual
insurance corporation, Plaintiff,

v.

Carol M. BROWNER, as Administrator of
the United States Environmental Pro-
tection Agency; Valdas V. Adamkus, as
Regional Administrator of Region V of
the United States Environmental Pro-
tection Agency; William E. Muno, as
Acting Director of the Office of Waste
Programs Enforcement of the United
States Environmental Protection Agen-
cy; and The United States Environmen-
tal Protection Agency, and United States
of America, Defendants.

No. 91 C 4254.

United States District Court,
N.D. Illinois, E.D.

April 27, 1994.

Daniel Charles Murray, Daniel A. Dupre, Joseph Gerard Lyons, Frederick S. Mueller, Johnson & Bell, Ltd., Chicago, IL, Linda Anne Thiel, Robert M. Wattson, Rolf E. Gilbertson, Sandra Wallace, David C. Linder, Zelle & Larson, Minneapolis, MN, for plaintiff.

Jonathan C. Haile, James Michael Kuhn, Asst. U.S. Atty., Chicago, IL, Alan D. Greenberg, U.S. Dept. of Land & Natural Resources, Elizabeth A. Strange, Nancy Gaines, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendants.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Employers Insurance of Wausau brings this four count action against the United States of America, the United States Environmental Protection Agency, and various Environmental Protection Agency officials.[1] Presently before the court is defendants' motion of judgment on the pleadings. For the reasons set forth below, the federal defendants' motion is granted.

### I. Judgment on the Pleadings Standard[2]

A party is entitled to judgment on the pleadings only if that party "clearly establishes that no material issue of fact remains to be resolved and that he or she is entitled to judgment as a matter of law." *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir.1987) (citing *Flora v. Home Fed. Savings & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982)). We will consider only matters presented in the pleadings, and will view the facts in the light most favorable to the non-moving party. *National Fidelity*, 811 F.2d at 358 (citing *Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d 174, 177 n. 2 (7th Cir.1986)).

### II. Factual Background[3]

On August 24, 1987, fire struck and destroyed a building located in Wyandotte, Michigan. The building's occupant held a policy with plaintiff Employers Insurance of Wausau ("Wausau"), which covered certain perils, including fire, as well as the expense of debris removal resulting from such perils. At the Wyandotte property, this debris included several electrical transformers. In a settlement with the policyholder, Wausau agreed to have certain fluids and oils drained from the transformers and removed from the site. In April, 1989, seven hundred gallons of fluids were removed from the transformers and transported to an oil recycling facility in Romulus, Michigan, where the fluids were placed in process tanks for recycling.

The following month, it was discovered that the Romulus facility was contaminated with polychlorinated biphenyls ("PCBs")[4]

1. Specifically, the suit names Carol M. Browner, as Administrator of the EPA, Valdas V. Adamkus, as Regional Administrator of Region V of the EPA, and William E. Muno, as Acting Director of the Office of Waste Programs Enforcement of the EPA.

2. Wausau has asked that we convert defendants' motion for judgment on the pleadings to a motion for summary judgment pursuant to Fed. R.Civ.P. 12(c). *See, e.g. Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d 174, 177–78 (7th Cir. 1986). However, the additional materials submitted by Wausau serve only to substantiate allegations made in Wausau's third amended complaint, which we view in the light most favorable to Wausau in any event. Furthermore, we are faced with primarily legal, rather than factual, issues in the present action. Accordingly, we decline to exercise our discretion to convert this motion to one for summary judgment.

3. The factual background is more fully set forth in our recent opinion in the related case *Employers Ins. of Wausau v. Clinton*, 848 F.Supp. 1359 (N.D.Ill.1994), as well as in our earlier opinion in the present action. *See Employers Ins. of Wausau v. Bush*, 791 F.Supp. 1314 (N.D.Ill.1992). We shall therefore limit our recitation of the facts to those relevant to the current motion.

4. PCBs are a group of chemicals used primarily as coolants in electrical equipment. They are "among the most hazardous man-made chemical substances." *Environmental Transp. Systems, Inc. v. ENSCO, Inc.*, 969 F.2d 503, 505 n. 1 (7th Cir.1992).

and volatile organic compounds ("VOCs").[5] The source of the PCB contamination was traced to the oil which had been used in the transformers at the Wyandotte building. On September 11, 1989, the Environmental Protection Agency ("EPA") designated Wausau as a potentially responsible party under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), 42 U.S.C. § 9601 *et seq.,*[6] and demanded Wausau's participation in the cleanup. Wausau did not respond, and in November, 1989, the EPA issued a unilateral administrative order directing Wausau and the other involved parties to begin emergency cleanup measures. Wausau strenuously objected, claiming that the EPA's characterization of Wausau's role in the transportation and disposal of the fluids was "materially incorrect," "erroneous, arbitrary and wrongful." After some further wrangling, the EPA filed an administrative action against Wausau under the Toxic Substance Control Act, 15 U.S.C. § 2601 *et seq.,* in an effort to force Wausau to comply with the order. Without admitting any responsibility, Wausau relented and submitted an Emergency Response Action Plan ("ERAP"), setting forth the manner in which it would comply with the order. The EPA approved Wausau's ERAP on February 26, 1990.

The Order itself listed thirty-three findings which detailed the various parties' involvement in the PCB contamination at the Romulus facility. It further specified that "hazardous substances" were present at the site, both due to the PCB contamination and because there existed waste in drums which contained high levels of VOCs. The order therefore called for the disposal and treatment of "[a]ll materials containing hazardous substance, pollutants or contaminants removed pursuant to this Order." These re-

quirements of the Order were not limited to PCB-contaminated areas.

The ERAP, drafted by Wausau and approved by the EPA, was expressly designed to "comply with the Order to the extent technically feasible under climatic conditions existing at the Site...." The ERAP is somewhat more PCB specific, setting forth particular requirements with respect to PCB contamination. However, it also contains several broad statements about Wausau's obligations at the Site. Finally, the ERAP expressly amended the Order to allow Wausau 180 days to complete its cleanup activities.

Following the EPA's approval of the ERAP, Wausau began its cleanup. However, in several telephone calls and letters to the EPA, Wausau indicated that it did not believe that it would be responsible for cleaning up any non-PCB contamination under the Order and the ERAP. In response, the EPA consistently maintained that both the Order and the ERAP were worded broadly and were not limited to PCB contamination, and that Wausau was required to clean up *all* hazardous substances located at the Site. However, Wausau persisted in its interpretation of the Order and ERAP, and claimed that it completed the prescribed cleanup on January 24, 1991, some 331 days after approval of the ERAP, or 151 days late. At no time did Wausau submit a written request for an extension of time, as required by the Order.

On March 22, 1991, Wausau filed a petition for reimbursement of reasonable response costs pursuant to § 9606(b)(2) of CERCLA. The EPA responded to Wausau's request by letter dated June 10, 1991, refusing to grant relief on the grounds that Wausau had not fully complied with the requirements of the § 9606 order and the ERAP. Wausau disputed the EPA's assessment of the work performed, claiming that the cleanup mea-

---

**5.** VOCs are "vapors emitted from substances such as gasoline and solvents." *Motor Vehicle Mfrs. Ass'n v. New York State Dep't of Envtl. Conservation,* 810 F.Supp. 1331, 1337 (N.D.N.Y. 1993). They include benzene and methylene chloride, and cause adverse human health effects such as cancer. *See Natural Resources Defense Council v. EPA,* 824 F.2d 1211 (D.C.Cir.1987).

**6.** We shall refer to the relevant sections of CERCLA as "CERCLA § ——," using the section numbers employed in the United States Code rather than those used in CERCLA's internal numbering system.

sures listed by the EPA were either complied with or not required by the order or the ERAP. To support its position, Wausau inspected the CIW site on June 24, 1991, and submitted "Post Response Action Compliance Comments" to the EPA on July 9, 1991. Nonetheless, the EPA hired an additional contractor to conduct further cleanup measures at the CIW site. The contractor completed the actions required by the administrative order on October 25, 1991.

Wausau brought the instant action on July 9, 1991. Following a motion to dismiss, which we granted in part and denied in part, *see Employers Ins. of Wausau v. Bush,* 791 F.Supp. 1314 (N.D.Ill.1992), four counts remained, asserting violations of procedural due process, substantive due process, and equal protection, along with a claim under the Administrative Procedure Act.[7] The defendants have now moved for judgment on the pleadings on these remaining claims.

### III. Statutory Background

Enacted in 1980, "CERCLA was designed 'to bring order to the array of partly redundant, partly inadequate federal hazardous substances clean up and compensation laws.'" *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1386 (5th Cir.1989) (quoting *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1040 (2d Cir.1985)). The primary purpose of CERCLA is "the prompt cleanup of hazardous waste sites." *J.V. Peters & Co. v. Administrator, Environmental Protection Agency,* 767 F.2d 263, 264 (6th Cir.1985). To this end, upon a determination that there is an actual or threatened release of a hazardous substance,[8] CERCLA gives the EPA the authority (1) to take direct response action to clean up a site and later seek reimbursement from responsible parties, CERCLA § 9604(a), or (2) to require those responsible parties to conduct the cleanup themselves.[9] CERCLA § 9606(a); *see also Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1324 (7th Cir.1990). In the event the EPA chooses the latter course, it first identifies potentially responsible parties ("PRPs"), and requests voluntary help in the clean-up process. If the EPA receives no response, it issues an administrative order naming all of the PRPs and demanding their immediate assistance. At this point, a PRP has two alternatives. It may ignore the administrative order and wait for the EPA to bring an enforcement action against it. In the event the EPA brings such an action, the PRP is entitled to a judicial hearing prior to its forced involvement in the clean-up. CERCLA § 9613(h). However, the PRP is subject to significant, albeit discretionary, fines in the event it is determined that its failure to comply with the order was without "sufficient cause." CERCLA § 9606(b)(1).

On the other hand, the PRP may proceed with the clean-up, and subsequently petition the EPA for reimbursement of the funds it expended. CERCLA § 9606(b) This alternative was added as part of the SARA amendments of 1986 in order to "encourage potentially responsible parties to conduct a cleanup expeditiously and postpone litigation about responsibility to a later time." *Bethlehem Steel,* 918 F.2d at 1324. Specifically, CERCLA provides that those parties that "receive and comply" with a cleanup order are entitled to petition the EPA for reimbursement. CERCLA § 9606(b)(2)(A). To obtain reimbursement, a petitioner must establish (1) "by a preponderance of the evidence that it is not liable for response costs under section 9607(a) of [CERCLA] and that the costs for which it seeks reimbursement are reasonable in light of the action required by the relevant order," CERCLA § 9606(b)(2)(C), or (2) "on the administrative

---

**7.** In a related action, Wausau challenged the EPA's denial of its petition for reimbursement. *See Employers Ins. of Wausau v. Clinton,* 848 F.Supp. 1359 (N.D.Ill.1994) (granting defendants' motion for summary judgment).

**8.** CERCLA's definition of "hazardous substances" is broad, and includes hazardous wastes listed under five other federal environmental statutes, including the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq. See* CERCLA § 9601(14).

**9.** We note that most of the authority granted under CERCLA is explicitly imparted to the President. However, the President has delegated the administration of CERCLA to the Administrator of the EPA. *See* Exec. Order No. 12,580, 50 Fed.Reg. 2923 (1987), *reprinted in* 42 U.S.C. § 9615 note (Supp.1991).

record, that the [EPA's] decision in selecting the response action ordered was arbitrary and capricious or was otherwise not in accordance with law." CERCLA § 9606(b)(2)(D). If the EPA refuses to grant all or part of a § 9606(b)(2) petition for reimbursement, "the petitioner may within 30 days of receipt of such refusal file an action ... in the appropriate United States district court seeking reimbursement." CERCLA § 9606(b)(2)(B).

## IV. Discussion

### A. Procedural Due Process

Wausau maintains that CERCLA is constitutionally infirm, both as applied and on its face. Specifically, Wausau claims that the remedial scheme set up by CERCLA § 9606(b) deprived it of procedural due process, at both the pre-enforcement and post-enforcement stages. We shall consider each of Wausau's contentions in turn.

### 1. Pre–Enforcement Review

■ Wausau claims that it did not have the opportunity for a meaningful hearing prior to being compelled to participate in the clean-up. As the Supreme Court noted in *Matthews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976), due process entitles an individual to be heard "at a meaningful time and in a meaningful manner." Three factors are generally to be considered in determining whether this due process standard has been satisfied: (1) the significance of the private interest that is to be affected; (2) the risk of erroneous deprivation of such interest, and the likely value of any additional procedural safeguards; and (3) the government's interest in the existing procedural framework, including assessment of the burdens which would accompany further procedural safeguards. *Id.* at 335, 96 S.Ct. at 903.

■ As defendants point out, the provision for pre-enforcement review under CERCLA has been repeatedly challenged, and courts have uniformly upheld its constitutionality. *See, e.g., Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 295–96 (6th Cir.1991); *Dickerson v. EPA*, 834 F.2d 974, 978 n. 7 (11th Cir.1987); *Solid State Circuits, Inc. v. EPA*, 812 F.2d 383, 390 (8th Cir.1987); *Wagner Seed Co. v. Daggett*, 800 F.2d 310, 315–16 (2d Cir.1986). We see no reason to disagree with the well-reasoned conclusions of those courts. An assessment of the factors listed in *Eldridge* clearly supports our holding. We first consider the private interests at stake, as the process due in a given circumstance depends largely upon the significance of the interest involved. Here, the only possible deprivation under CERCLA is purely economic. That is, CERCLA orders generally require that a PRP expend the funds necessary to prevent or clean-up the release of hazardous wastes. It is well established that, unlike deprivations of life or liberty, monetary deprivations do not demand the strictest level of due process. *See Eldridge*, 424 U.S. at 333, 96 S.Ct. at 902; *Dickerson*, 834 F.2d at 978 n. 7. Accordingly, this factor cuts in favor of CERCLA's constitutionality.

The same is true of the second factor listed above. As noted, a PRP which believes that an order issued by the EPA is erroneous can refuse to comply with that order. In order to compel compliance with the order and to collect penalties for failure to comply, the EPA is required to bring an enforcement action pursuant to CERCLA § 9606(b)(1). At this stage, the PRP is entitled to judicial review of the order, including the question of liability. *See* CERCLA § 9613(h)(2); *Gary Steel Supply Co. v. Reagan*, 711 F.Supp. 471, 475 (N.D.Ill.1989). Accordingly, a PRP is fully entitled to obtain judicial review of the EPA's order prior to being deprived of its property.[10] We also observe that this oppor-

---

10. Wausau's convoluted argument to the contrary is unconvincing. Wausau notes that the EPA is vested with the authority to bring an enforcement action under CERCLA §§ 9606(b)(1) and 9613(h)(2). Because the decision to bring such an action is solely within the discretion of the EPA, Wausau argues, a PRP would not be able to obtain review of an order if the EPA refused to bring an enforcement action.

While this is certainly true, it is also irrelevant. That is, the only means that the EPA has of forcing a PRP to comply with an order, or of collecting penalties for failure to comply, is through an enforcement action. As a result, no deprivation can possibly occur until the EPA brings such an action, at which time the PRP is also entitled to judicial review. Accordingly, the lack of a hearing prior to the bringing of an

tunity for review is not compromised by the potential imposition of penalties at the pre-enforcement stage. First, as defendants note, a good faith defense to the administrative order precludes the application of the penalty provision under CERCLA § 9606(b)(1). Furthermore, CERCLA § 9606(b)(1) expressly makes the imposition of penalties discretionary with the court. As a result, the presence of the penalty provision does not affect the constitutionality of the procedures offered in CERCLA for pre-enforcement review. *See Wagner Seed Co.,* 800 F.2d at 316 ("[I]t is plain that there is no constitutional violation if the imposition of penalties is subject to judicial discretion and the enforcement provisions contain a good faith exception.").

In addition, further procedures would provide limited additional safeguards. The "sufficient cause" basis for non-compliance provides PRPs who believe an order erroneous with sufficient incentive to refuse to comply and take advantage of the opportunity for judicial review. Furthermore, the addition of the reimbursement provisions of CERCLA § 9606(b)(2) in 1986 clearly mitigates any concern that further procedural safeguards are needed. *See Solid State Circuits,* 812 F.2d at 398 n. 9 (inclusion of reimbursement "ameliorated significantly" pre-enforcement concerns of PRPs). Where, as here, a PRP can be made whole through post-deprivation procedures, pre-enforcement due process requirements are less strict. *See Brown v. Brienen,* 722 F.2d 360, 365 (7th Cir.1983).

On the other hand, additional procedural requirements at the pre-enforcement stage would seriously compromise the government's interest. The primary purpose of CERCLA is the prompt cleanup of hazardous waste sites. *J.V. Peters & Co. v. EPA,* 767 F.2d 263, 264 (6th Cir.1985). This goal would be thwarted if every PRP were allowed and encouraged to pursue judicial review of an order prior to the enforcement of that order. Such a scenario runs directly counter to "the purpose of [CERCLA § 9613(h), which] is to prevent litigation from delaying remediation." *North Shore Gas Co. v. EPA,* 930 F.2d 1239, 1244 (7th Cir.1991).

Clearly, the addition of procedural safeguards at the pre-enforcement stage would place significant burdens on the government, seriously compromising its interests in maintaining the environment and preventing the release of hazardous wastes.

However, Wausau also maintains that the procedures offered are inadequate because the EPA failed to provide it with the documents which supported its conclusion that Wausau was properly named as a PRP. Wausau therefore contends that it was not in a position to determine whether it had "sufficient cause" to refuse to comply with the administrative order. We are unconvinced by Wausau's arguments for several reasons. First, on a practical level, Wausau was fully aware of the extent of its involvement in the transfer of PCB-contaminated materials to the Romulus site. Similarly, it was equally able to speak with the other PRPs, one of which was its own insured, to determine the information compiled by the EPA. As a result, we see no basis for Wausau's argument that the EPA was possessed of information regarding Wausau's activities leading up to the contamination that Wausau itself did not have or have access to. However, even if the EPA had otherwise unattainable information regarding Wausau's potential liability, nondisclosure at the pre-enforcement stage did not violate Wausau's due process rights. *See Solid State Circuits,* 812 F.2d at 392 (finding CERCLA constitutional notwithstanding EPA's failure to "provide[ ] the challenging party with meaningful guidance as to the validity or applicability of the EPA order."). This is particularly true since "[t]he CERCLA statutory scheme, as amended by SARA, merely serves to effectuate a delay in a plaintiff's ability to have a full hearing on the issue of liability and does not substantively affect the adequacy of such a hearing." *Barmet,* 927 F.2d at 295. In other words, because CERCLA § 9606(b)(2) provides for judicial review of a party's liability, which is based upon a preponderance of the evidence and not limited to the administrative record, the limitations which exist at the pre-enforcement stage do not make the

enforcement action is irrelevant, since there is

also no deprivation at that time.

statute constitutionally infirm.[11] We are simply unwilling to expose the pre-enforcement process to extended debates and discovery on the merits of an administrative order. To do so is not required under *Eldridge* to satisfy due process requirements; on the contrary, "[t]o delay remedial action until the liability situation is unscrambled would be inconsistent with the statutory plan to promptly eliminate the sources of danger to health and environment." *Lone Pine Steering Committee v. EPA,* 777 F.2d 882, 886 (3d Cir.1985), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).

## 2. Post–Enforcement Review

■ Wausau claims that the reimbursement provision of CERCLA § 9606(b)(2) violates due process, both as written and as applied. We reject each of these contentions. Wausau's claim that the provision is facially unconstitutional is based upon the rule that, where pre-enforcement due process protections are lacking, a deprived party is entitled to "prompt" post-deprivation review. *See, e.g. Industrial Park Development Co. v. EPA,* 604 F.Supp. 1136, 1141 (E.D.Pa.1985). Wausau notes that CERCLA § 9606(b)(2) fails to limit the amount of time in which the EPA may consider a reimbursement petition, thus failing to insure a "prompt" post deprivation review. The flaw in Wausau's argument is apparent: as every court that has considered the issue has found, the pre-enforcement procedures available under CERCLA satisfy due process requirements. Accordingly, the rule requiring "prompt" post-deprivation review does not apply.

■ Wausau also raises two arguments in support of its claim that CERCLA § 9606(b)(2) is unconstitutional as applied. Again it claims that the EPA's failure to disclose liability evidence, this time during the reimbursement process, constituted a violation of due process. However, we recently

concluded in the related case *Employers Ins. of Wausau v. Clinton,* 848 F.Supp. 1359 (N.D.Ill.1994) that Wausau failed to satisfy the threshold requirement of "complying" with the order, and was thus not entitled to consideration of its reimbursement petition on the merits. As a result, any objection to the EPA's non-disclosure of liability evidence for the purpose of reimbursement is irrelevant. That is, the sole issue confronted by the EPA following Wausau's activities in cleaning up the Romulus site was whether Wausau complied with the order and completed the clean-up. Liability evidence was immaterial for that determination. Because the EPA concluded that Wausau had failed in its obligations at the site, it did not go on to determine whether Wausau was entitled to reimbursement, and disclosure of liability was unnecessary. *See* CERCLA § 9606(b)(2)(A). As a result, Wausau's "as applied" challenge never became ripe, and we shall therefore not consider it here.

■ We also reject Wausau's other "as applied" constitutional challenge. As noted above, reimbursement is only available to a PRP which "receives and complies" with the EPA's order. *See* CERCLA § 9606(b)(2)(A). Wausau contends that, once all work is completed at a given site, 9606(b)(2) reimbursement should be available to any party who participated in the clean-up, regardless of who actually completed the work.[12] This is, of course, contrary to the EPA's interpretation and application of the provision. It is well established that we must defer to an agency's interpretation of a statute it administers, as long as that interpretation is reasonable. *Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). In the present case, we can not say that the EPA's interpretation of CERCLA § 9606(b)(2)(A) is unreasonable; on the con-

**11.** We also note that *Solid State Circuits* applied CERCLA as it existed before the addition of the reimbursement provision. Thus, the constitutionality of CERCLA does not hinge upon the post-enforcement review available under CERCLA § 9606(b)(2); rather, that provision merely adds further support to a finding of constitutionality.

**12.** For example, Wausau maintains that it is entitled to consideration of its reimbursement petition, even though it failed to fully comply with the order, since the all the necessary work at the site has been "completed," albeit by the EPA.

trary, it is the same reading which we would give the provision if the interpretation were initially within our province. Furthermore, such an interpretation does not affect the constitutionality of CERCLA. As discussed above, a PRP can refuse to comply with an administrative order and obtain judicial review before any deprivation of its property. In general, a litigant that receives no hearing from an agency cannot assert a due process claim if it failed to exercise an earlier option for a meaningful hearing. *See, e.g., AJA Assoc. v. Corps of Eng'rs,* 817 F.2d 1070, 1073 (3d Cir.1987). We also reiterate that the government has a substantial interest in encouraging PRPs that start a clean-up job to finish that job; a project halted in mid-stride results in further public exposure to hazardous waste.[13] Finally, we note that the EPA does not have unfettered discretion to determine whether a PRP has "complied." Indeed, in the related case *Employers Ins. of Wausau v. Clinton,* 848 F.Supp. 1359 (N.D.Ill.1994), we expressly reviewed the EPA's decision in that regard. Accordingly, we conclude that CERCLA's post-deprivation remedy, like its pre-enforcement procedures, comport fully with procedural due process.

### B. Substantive Due Process

■ The second count of Wausau's third amended complaint asserts a violation of sub-stantive due process. As we stated in *Universal Sec. Ins. Co. v. Koefoed,* 775 F.Supp. 240 (N.D.Ill.1991), "[w]hile procedural due process assures fair procedure in the decision-making process, the substantive due process clause is concerned with the decision itself." *Id.* at 244. We initially observe that the controversial and complex concept of "substantive due process" remains nebulous, and its contours with respect to property interests have not yet been defined by the Supreme Court. *See, e.g., New Burnham Prairie Homes v. Village of Burnham,* 910 F.2d 1474, 1480 n. 5 (7th Cir.1990). *See also Illinois Psychological Ass'n v. Falk,* 818 F.2d 1337, 1342 (7th Cir.1987) (noting the "oxymoron of substantive due process"); *Koefoed,* 775 F.Supp. at 244 ("The substantive component of the due process clause has been referred to as an area of the law 'famous for its controversy, and not known for its simplicity.' ") (citation omitted). Notwithstanding these observations, the Seventh Circuit has set forth certain requirements for the successful maintenance of a substantive due process claim: "in addition to alleging that the decision was arbitrary and irrational, 'the plaintiff must also show either a separate constitutional violation or the inadequacy of state law remedies.'" *New Burnham,* 910 F.2d at 1481 (citations omitted).[14] These re-

---

**13.** Indeed, the heart of Wausau's objection is that it was required under the order to clean up non-PCB contaminants, notwithstanding the fact that even the EPA acknowledged that Wausau's potential responsibility was limited to PCB contamination. In our recent opinion in *Employers Ins. of Wausau v. Clinton,* 848 F.Supp. 1359, 1367 (N.D.Ill.1994), we noted that the EPA, to the extent consistent with the order, can require a PRP which has decided to clean-up a site to comply fully with that order, even if the order covers hazardous waste for which the PRP is not even potentially responsible, since that PRP can then be reimbursed to the extent the order was overbroad pursuant to CERCLA § 9606(b)(2)(D). We note at this juncture, however, that the undisputed overbreadth of an order must also provide "sufficient cause" for noncompliance in the first instance. We reach this conclusion based upon the statute's history. The reimbursement provision was added in 1986; prior to that date, a party potentially responsible for certain wastes at a site could only rely upon the "sufficient cause" exception to challenge an overbroad order. If the overbreadth of an otherwise legitimate order did not constitute "sufficient cause" for noncompliance, then the EPA could have forced a PRP to clean up all hazardous waste at a site, with no possibility of a hearing or review at any time, a clearly unconstitutional interpretation of "sufficient cause." We see no indication that Congress intended to change this necessary understanding of "sufficient cause" in adding the reimbursement provisions in 1986. Indeed, the continuing validity of this interpretation of "sufficient cause" is borne out in defendants Memorandum in Support of the present motion: "A recipient of a section 106 order that has sufficient cause to believe the order erroneous *in some respect* has sufficient self-interest to refuse to comply and to obtain judicial review of the order prior to expending any of its property." (emphasis added). As a result, it is clear that Wausau could have challenged the order at the pre-enforcement stage, based solely on its overbreadth.

**14.** *New Burnham* arose in the context of state-based property rights, thus explaining the reference to the adequacy of state law, as opposed to

quirements are clearly not met in the present action.

■ As discussed above, Wausau has failed to establish that the remedial scheme under CERCLA violated Wausau's procedural due process rights. Wausau can therefore not hang its substantive due process claim on this hook. Likewise, Wausau is unable to show a separate constitutional violation. Of course, Wausau has alleged that the EPA violated both procedural due process and principles of equal protection. Again, however, we rejected Wausau's procedural due process claim above, and we reject Wausau's equal protection claim below. Our conclusions with respect to these issues therefore leave Wausau without a basis for its substantive due process claim, even if the EPA's actions were arbitrary and irrational. This case is thus similar to both *New Burnham* and *Koefoed*, in which the courts rejected procedural and/or equal protection claims, thereby eliminating the grounds for a substantive due process claim. *See New Burnham*, 910 F.2d at 1481; *Koefoed*, 775 F.Supp. at 246. Because Wausau has failed to meet the Seventh Circuit's requirements for maintaining a substantive due process claim, we grant defendants' motion for judgment on the pleadings on Count II of Wausau's third amended complaint.[15]

## C. Equal Protection

■ In Count III, Wausau claims that the defendants violated the equal protection clause by treating Wausau differently than other PRPs. It is well established that "[i]n order to assert a constitutional claim based on violation of equal protection, a complaining party must assert disparate treatment based on their membership in a particular group." *New Burnham Prairie Home, Inc. v. Village of Burnham*, 910 F.2d 1474, 1481 (7th Cir.1990). In other words, a plaintiff must demonstrate that the disparate treatment is causally connected to the characteristics of a group of which the plaintiff is a part, not the individual characteristics of the plaintiff itself. *Id. See also Personnel Administrator v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) ("[T]he decisionmaker [must have] selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects *upon an identifiable group.*") (emphasis added). Here Wausau claims that it was in a "class of potentially liable parties which are financially able to incur response costs." Plaintiff's Amended Response Memorandum at 23. However, even if this is a cognizable class, Wausau has utterly failed to allege that it was treated differently "because of" its membership in this group. On the contrary, Wausau asserts that it was "accorded treatment by EPA that was *dissimilar* to the EPA's treatment of other financially-able PRPs." *Id.* (emphasis added). Because Wausau has effectively refuted its own claim of *group*-based discrimination, it has also thwarted its equal protection claim. Defendants are therefore entitled to judgment on the pleadings on Count III of Wausau's third amended complaint.

## D. Administrative Procedure Act

■ Wausau's final count seeks review under the Administrative Procedure Act ("APA"), 5 U.S.C. § 700 *et seq.* Specifically, Wausau would have us conclude that the EPA's determination that Wausau was a PRP, and its subsequent actions, were un-

---

federal law, remedies. However, there is no reason that the Seventh Circuit's requirements would not apply equally to claims based upon federal law. As a result, we will look generally to the sufficiency of procedural remedies to determine whether Wausau's substantive due process claim will fail or succeed.

**15.** An indication of the limited stock which Wausau placed in its substantive due process claim is the fact that its sole response to defendants' motion for judgment on Count II came in a footnote in its Response Memorandum. Of course, in Wausau's case, this should come as no

surprise, since Wausau's brief is replete with footnotes, totalling thirty-three footnotes over twenty-five pages. Indeed, all but two pages of Wausau's twenty-one page argument include at least one footnote, and ten contain two or more. These footnotes, in turn, range from as little as three to as many as forty-one single spaced lines, in several cases occupying well over half the page. This court frowns on parties who attempt to thwart well-established page limits by crowding substantive arguments into multiple single-spaced footnotes. We will simply give such arguments the respect which their placement indicates they deserve.

supported by substantial evidence, arbitrary, capricious, and not in accordance with law. Congress enacted the APA to guarantee that individuals could obtain review for actions taken by administrative agencies. However, the APA applies only when "there is no other adequate remedy in a court." APA § 704. In addition, the APA does not apply "to the extent the relevant statute 'preclude[s] judicial review.'" *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345, 104 S.Ct. 2450, 2453, 81 L.Ed.2d 270 (1984) (quoting APA § 701(a)(1)). CERCLA § 9613(h) expressly limits the times at which a party may seek review of any order issued under CERCLA § 9606(a), which is essentially what Wausau is seeking in Count IV. Specifically, a party may only obtain judicial review of a CERCLA § 9606(a) order in one of the following five actions:

(1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

CERCLA § 9613(h). It is therefore apparent that CERCLA provides for review of the issue Wausau raises in Count IV, and that CERCLA precludes judicial review of that issue outside the scope of CERCLA § 9613(h). Accordingly, review under the Administrative Procedure Act is inappropri-

ate here.[16] We therefore grant defendants' motion for judgment on the pleadings with respect to Count IV.

### V. Conclusion

For the reasons set forth above, we grant defendants' motion for judgment on the pleadings. It is so ordered.

---

16. We also note that Wausau has completely failed to respond to defendants' motion for judgment on Count IV, thereby conceding defendants' arguments in support of that motion. *See*

*Valluzzi v. United States Postal Service*, 775 F.Supp. 1124, 1125 (N.D.Ill.1991); *Southern Nevada Shell Dealers Ass'n v. Shell Oil Co.*, 725 F.Supp. 1104, 1109 (D.Nev.1989).